GLENBROOK LEASING COMPANY,
Appellant,

v.

Michael F. BEAUSANG, Jr., Esquire
and Butera, Beausang, Cohen &
Brennan, Appellees.

Superior Court of Pennsylvania.

Argued Sept. 9, 2003.

Filed Dec. 15, 2003.

Kevin W. Gibson, Media, for appellant.

Ronald F. Brien, Jr., Philadelphia, for appellees.

Before: GRACI, OLSZEWSKI, and CAVANAUGH, JJ.

GRACI, J.

¶ 1 Appellant, Glenbrook Leasing Company ("Glenbrook") brings this timely appeal from an· order of the Court of Common Pleas of Delaware County granting Appellees', Michael F. Beausang, Esquire, and Butera, Beausang, Cohen & Brennan ("BBCB") motion for summary judgment. After careful review, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 The factual and procedural history was aptly summarized by the trial court as follows:

Plaintiff Glenbrook Leasing Company (hereinafter "Glenbrook") is a real estate partnership consisting of four physicians who collectively practice as "Main Line Women's Health Care" (MLWHC). On or about October 1987, Michael F. Beausang, Jr., Esquire and his firm Butera, Beausang, Cohen & Brennan (hereinafter "BBCB") were retained by plaintiff to prepare an agreement of sale and deed in connection with plaintiff's proposed purchase of office space for medical offices at the Radnor House. In addition to the sale and purchase of office space, the Agreement of sale also contemplated that:

Seller shall reserve twenty-six (26) parking spaces for the sole use of Buyer, and in addition, nine (9) other parking spaces reserved for patients for the period Monday through Friday, of each day of each week from 9:00 a.m. to 5:00 p.m.

Paragraph 31, Agreement of Sale, Exhibit A to Plaintiff's Complaint.

. On October 30, 1987, Glenbrook signed and executed the Agreement of Sale which included Paragraph 31. The real estate closing occurred on April 21, 1988 at which time a deed for office space was conveyed to Glenbrook. The deed was silent with respect to the parking spaces. The defendant law firm's representation of Glenbrook in the real estate transaction concluded in 1988.

A dispute arose between Glenbrook and the Radnor House Condominium Association, (hereinafter "RHCA") in 1994 regarding a restriction of Glenbrook's use of the thirty-five parking

spaces as a result of proposed construction to be performed by RHCA. *Complaint*, Paragraph 10. Glenbrook objected to the temporary loss of the parking spaces as too disruptive to the medical practice of lessee MLWHC whereupon RHCA informed Plaintiff that because Glenbrook was not the owner of the parking spaces, Glenbrook had no legal right to object to the proposed construction. *Id.* at Paragraph 11; see also Letter dated October 11, 1994, from counsel for RHCA to MLWHC and Glenbrook ("Our internal investigation indicates that in GLC's Agreement of Sale with Radnor House Associates, Inc. there is merely a provision reserving thirty-five (35)[s]paces for GLC, but there is no transfer of title.") (Certification of Rex.F. Brien in Support of Motion for Summary Judgment at Exhibit E.)

On October 11, 1994, RHCA's counsel sent a letter to Glenbrook wherein he advised:

> [p]lease also look at your conveyancing documents. You will see that Radnor House Associates, Inc. has conveyed no title to Common Element spaces. The reservation of use contained in your Agreement of Sale was not lawfully made and, even if lawful, merged into your deed. Your deed does not transfer title or confer an exclusive easement.

(Brien Certif. At Exhibit E, p. 3) RHCA threatened suit and the assessment of back charges for the cost of maintenance and reasonable rental for the subject parking spaces if the dispute was not amicably resolved. On November 21, 1994, RHCA's counsel sent a letter to defendant Beausang, Glenbrook's counsel at the time, accusing Beausang of legal malpractice. (Brien Certif. at Exhibit F.) A copy of this letter was faxed to Glenbrook by Beausang. *Id.*

In November 1994, Glenbrook sought a "second opinion" from Bradley Rainer, Esquire regarding RHCA's position with respect to the subject parking spaces. *See* Rainer's letter attached to the Brien Certif. at Exhibit H. Mr. Rainer concluded that Glenbrook "has a potential claim against the Seller and the Condominium Association. However, the success of each claim is questionable." *Id.* at 1. Rainer ended his opinion letter by noting that "[a]s you know, Glenbrook and/or Main Line may have claims against other parties which have not been addressed in this letter." *Id.* at 5. By "other parties", Rainer was referring to, inter alia, Beausang. *See* Rainer deposition at pp. 67–68; (Brien Certif. at Exhibit G); see also July 3, 2002 letter from Glenbrook's attorney in this action, Kevin Gibson, Esquire to Mr. Rainer, at p. 1 ("When we recently spoke you advised that with now having your 'notes' retrieved from your file that you have a specific recollection that you had conversations with Dr. Rudolph present wherein you advised that one of those other parties could have been Glenbrook's then counsel Michael Beausang.") (Brien Certif. at Ex. 1).

In January 1995, RHCA began charging Glenbrook at $20.00 per parking space fee which Glenbrook refused to pay. *Complaint, Paragraphs 12–13.* Glenbrook's dispute with RHCA over the subject parking spaces escalated into litigation. *Id.* Glenbrook requested BBCB to defend their interests in the action. The litigation in the RHCA suit culminated in a bench trial before the Honorable Clement J. McGovern in November and December, 1999. Judge McGovern found in favor of RHCA and held that the intention of the parties at the time of the signing of the agreement

of sale was to create a lease of parking spaces. *Radnor House Condominium Association v. Eric A. Corkhill, Jr., M.D., et al,* No. 95–7433 (Delaware Co. C.C.P. 200[0]) (Certification of Rex Brien attached as Exhibit 2 to Reply Brief in Further Support of Defendants' Motion for Summary Judgment). This matter was ultimately settled after appeal.

The instant action was initiated by the filing of a Writ of Summons on or about December 6, 2000. Glenbrook's complaint was filed on or about March 13, 2002.

Opinion, 4/29/03, at 1–4.

¶ 3 Following discovery, the trial court granted BBCB's motion for summary judgment based on the affirmative defense of the statute of limitations and this timely appeal followed. Glenbrook raises the following issues for our consideration.

1) Did the trial court abuse its discretion in entering summary judgment in favor of the [BBCB] in that the continuous representation of [Glenbrook] by [BBCB] tolled the applicable statute of limitations?

. . .

2) Did the trial court abuse its discretion in not finding that [BBCB] Agreement that [Glenbrook] would not have to pay his firm's legal fees constituted an equitable tolling agreement, which therefore tolled the applicable statute of limitations?

. . .

3) Did the trial court abuse its discretion in granting the Motion for Summary Judgment in that the issue as to whether the [Glenbrook] was lulled into a false sense of security by the [BBCB] Agreement that [Glenbrook] would not have to pay fees until a disposition of the lawsuit filed against [Glenbrook] by [Glenbrook's] Condo-

minium Association was a jury question which could not be resolved by the summary judgment record before the trial court?

. . .

4) Did the trial court abuse its discretion in entering summary judgment in favor of the [BBCB] in that the two year Statute of Limitations did not commence running until February 24, 2000, the date upon which Judge McGovern issued his opinion which was the first time [Glenbrook] discovered it had been harmed by [BBCB's] negligence?

. . .

Brief for Appellant, at 2–3.

## II. DISCUSSION

¶ 4 The law is well settled regarding our standard of review of appeals from a grant of summary judgment.

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. *Capek v. Devito,* [564 Pa. 267], 767 A.2d 1047, 1048, n. 1 (Pa.2001). As with all questions of law, our review is plenary. *Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167, 1170 ([Pa.] 1995).

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. "Failure of a non-moving party to adduce sufficient evi-

dence on an issue essential to his case and on which it bears the burden of proof . . . . establishes the entitlement of the moving party to judgment as a matter of law." *Young v. PennDOT*, 560 Pa. 373, 744 A.2d 1276, 1277 (2000). Lastly, we will review the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Downey v. Crozer–Chester Medical Center*, 817 A.2d 517, 524 (Pa.Super.2003) (citation omitted).

¶ 5 The first question we must address is when the statute of limitations began to run. In making this determination, we are mindful of the Pennsylvania courts' policy favoring the strict application of statutes of limitation. *Booher v. Olczak*, 797 A.2d 342 (Pa.Super.2002). In actions for legal malpractice, Pennsylvania uses the occurrence rule to determine when the statute of limitations begins to accrue. Under this rule, "the statutory period commences upon the happening of the alleged breach of duty." *Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger*, 449 Pa.Super. 367, 674 A.2d 244, 246 (1996) (citation omitted). "An exception to this rule is the equitable discovery rule which will be applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. Lack of knowledge, mistake or misunderstanding, will not toll the running of the statute." *Id.* at 246–247 (citations omitted).

¶ 6 The trial court in the present case found that

[i]n this case, it would be unreasonable to expect Glenbrook learned of the injury in 1988 when it received the Deed to the office space which had no mention of the 35 parking spaces referenced in the Agreement of Sale. As non-attorneys, the individuals that constitute Glenbrook had no reason to know that the real state doctrine of merger operated to exclude the 35 parking spaces from their ownership notwithstanding the spaces were referenced in the Agreement of Sale. Therefore, it is proper to invoke and apply the discovery rule in this matter. . . .

Opinion, 4/29/03, at 7. We agree. We further agree with the trial court that,

it is beyond dispute that Glenbrook acquired knowledge of the harm in late 1994 when RHCA informed them of a problem with the deed. At the same time, this was confirmed by Bradley Rainer, Esquire from whom they sought a second legal opinion. Armed with this knowledge, however, [Glenbrook] chose not to initiate this action until December 6, 2000, when a writ of summons was filed. Using the discovery rule to find an accrual date of November 1994 for the two-year statute of limitations, it is beyond dispute that this 2000 action is time-barred.

*Id.* at 7–8.

¶ 7 Glenbrook begins by arguing that instead of applying the equitable discovery exception to the occurrence rule, this Court should apply the "Continuous Representation Rule." Appellant's Brief, at 9. Under the continuous representation rule, the statute of limitations would not begin to run until approximately December 1, 2000, the date on which Glenbrook terminated BBCB as counsel. Glenbrook asks this Court to accept, as it claims "the vast majority of other jurisdictions have [accepted], the concept that the continuous representation of a client by an attorney tolls the running of a statute of limitations." *Id.* (footnote omitted). In support of this argument, Glenbrook cites *Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger, supra*, which Glen-

brook claims "is a tacit acknowledgement that Pennsylvania has adopted the 'continuous representation rule.'" Appellant's Brief, at 11. We disagree. The *Robbins* court, in its discussion of *Bailey v. Tucker*, 533 Pa. 237, 621 A.2d 108 (1993), a criminal defense malpractice case, explains that in applying the discovery exception to the occurrence rule, the *Bailey* Court determined that a criminal defendant becomes aware that his attorney was responsible for the defendant's harm when the attorney-client relationship is terminated. Contrary to Glenbrook's claims, both the *Bailey* and *Robbins* courts applied the occurrence and discovery rules in determining when the statute of limitations began to accrue. The *Robbins* count consciously reiterated that, "[i]n Pennsylvania, the method used to determine when the statute begins to accrue is the occurrence rule or the discovery rule when appropriate." *Id.* at 248.

¶ 8 In *Robbins*, our Court determined that the statute of limitations began to run when the plaintiff medical corporation was notified by the IRS that its pension deduction was disallowed. Similarly, the trial court in the present case applied the discovery rule, and found that the statute of limitations began running when Glenbrook was notified by RHCA of Beausang's negligent preparation of the deed of sale and the confirmation of that fact by a second legal opinion. Glenbrook has failed to persuade us that the application of the discovery rule in this case is inappropriate, and we therefore, decline Glenbrook's invitation to adopt the rule of continuous representation and find no error of law in the trial court's rejection of Glenbrook's argument. Moreover, even if we were inclined to accept Glenbrook's invitation and adopt the continuous representation rule as the law of the Commonwealth, as an intermediate appellate court, the "duty and obligation" of which is "to follow the decisional law of [the Supreme] Court," *Commonwealth v. Shaffer*, 557 Pa. 453, 734 A.2d 840, 844 n. 6 (1999), it is not our place to announce such a sweeping change in the law relating to when the statute of limitations begins to accrue. Paraphrasing what we said in a somewhat different context,

> as an intermediate appellate court, the grant of the relief sought would entail the expansion of an existing doctrine [the equitable discovery exception to the occurrence rule] or the enunciation of a new precept of Pennsylvania law [the continuous representation rule], neither of which this court is empowered to do. *Malinder v. Jenkins Elevator & Machine Co.*, 371 Pa.Super. 414, 538 A.2d 509 (1988); *DeFrancesco v. Western Pennsylvania Water Co.*, 329 Pa.Super. 508, 478 A.2d 1295 (1984); *Rambo v. Commissioner of Police*, 301 Pa.Super. 135, 447 A.2d 279 (1982); *Hillbrook Apartments v. Nyce Crete Co.*, 237 Pa.Super. 565, 352 A.2d 148 (1975); *Crowell Office Equipment v. Krug*, 213 Pa.Super. 261, 247 A.2d 657 (1968); *Beckham v. Travelers Insurance Co.*, 206 Pa.Super. 488, 214 A.2d 299 (1965).

*Commonwealth v. Smith*, 404 Pa.Super. 553, 591 A.2d 730, 733 (1991), *reversed on other grounds*, 532 Pa. 177, 615 A.2d 321 (1992) (footnote omitted). This is a task entrusted to the Supreme Court of Pennsylvania or the General Assembly and we will not usurp it.

¶ 9 Next, Glenbrook argues that the doctrine of equitable estoppel should bar BBCB from asserting that Glenbrook's claim is time-barred. Appellant's Brief, at 15. Glenbrook claims that the special relationship that exists between physicians and their patients also exists between lawyers and their clients. Glenbrook argues that, as in *Levenson v. Souser*, 384 Pa.Super. 132, 557 A.2d 1081 (1989), where this Court found that the inherent trust that

patients place in their doctors can lull patients into a false sense of security regarding the need to file suit, BBCB's assurances that Glenbrook would prevail against the condominium association and their agreement that Glenbrook would not have to pay any legal fees until the conclusion of the matter lulled Glenbrook into a false sense of security about any need to file suit against BBCB. Thus, Glenbrook claims that BBCB's representations rose to the level of unintentional concealment of the possibility of a claim against BBCB for legal malpractice and tolled the statute of limitations. Appellant's Brief, at 16–17.

¶ 10 BBCB in their brief cites to a recent decision of this Court that explained the Pennsylvania doctrine of equitable tolling:

If through fraud or concealment the defendant causes the plaintiff to relax his or her vigilance or deviate from his or her right of inquiry, the defendant is estopped from invoking the bar of the statute of limitations. *Molineux v. Reed*, 516 Pa. 398, 403, 532 A.2d 792, 794 (1987). The defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiable relied. *Kingston Coal Co. v. Felton Mining Co. Inc.*, 456 Pa.Super. 270, 690 A.2d 284, 291 ([Pa.Super.] 1997). Mere mistake or misunderstanding is insufficient. *Molineux.* Also, mere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment. *Sevin v. Kelshaw*, 417 Pa.Super. 1, 611 A.2d 1232, 1236 ([Pa.Super.] 1992). The burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party. *Nesbitt v. Erie Coach Company*, 416 Pa. 89, 204 A.2d 473 (1964).

*Lange v. Burd*, 800 A.2d 336, 339 (Pa.Super.2002). Applied to the facts at hand,

the trial court found "no conduct remotely arising to fraud or concealment by Beausang or BBCB." Opinion, 4/19/03, at 10. The trial court explained:

Indeed it was Beausang who sent the letter to Glenbrook from RHCA wherein RHCA explicitly accused Beausang of malpractice in failing to secure the ownership of the 35 parking spaces. Glenbrook further argues that defendants "lulled" it into a false sense of security by advising Glenbrook that it would prevail against the claims by RHCA and as indicative of the confidence, Glenbrook need not pay counsel fees to BBCB for representation in the RHCA suit. Accepting these assertions as true, plaintiff's argument is still contradicted by the admitted fact that it actively sought a second legal opinion and was advised by counsel that it may have a legal malpractice claim against defendants. Plaintiff cannot actively investigate and receive the information that harm has occurred and then seek equitable tolling of the statute of limitations. . . .

*Id.* We agree. We find no evidence of fraud or concealment on the part of BBCB regarding allegations that they may have committed legal practice in their representation of Glenbrook. Upon receipt of the first allegation of malpractice, BBCB immediately provided Glenbrook with a copy of the claim. Furthermore, we find persuasive, the argument set forth by BBCB in their brief that "Glenbrook's active investigation of its claim belies any reliance on defendants' alleged assurances." Appellee's Brief, at 18. Thus, we find Glenbrook's equitable tolling claim without merit.

¶ 11 In a related claim, Glenbrook argues that the equitable tolling claim presented a question of fact that should have been resolved by a jury. Glenbrook argues that the question of whether they

were lulled into a false sense of security was a factual issue requiring jury deliberation. Appellant's Brief, at 17.

¶ 12 This Court has held that the determination of when the statute of limitations has run on a claim for legal malpractice is usually a question of law for the trial judge, unless the issue involves a factual determination. *Fiorentino v. Rapoport,* 693 A.2d 208, 219 (Pa.Super.1997). Where the facts are so clear that reasonable minds cannot differ regarding when the limitations period begins running, the question can be determined as a matter of law. *Id.* It is undisputed that Glenbrook learned of the potential malpractice claim in November of 1994, when RHCA sent a letter to Glenbrook's counsel explicitly accusing Beausang of malpractice and detailing the basis of support for their conclusion. Defendants' Motion for Summary Judgment, at ¶ 7; Plaintiff's Answer to the Defendants' Motion for Summary Judgment, at ¶ 7. It is also undisputed that Glenbrook sought a second legal opinion from Bradley Rainer, Esquire, also in November of 1994, which opinion confirmed that Glenbrook had a possible legal action against Beausang. *Id.* at ¶¶ 8–11. We are in agreement with the trial court that "it is beyond dispute that Glenbrook acquired knowledge of the harm in late 1994" and find no abuse of discretion by the trial court for making a legal determination that the statute of limitations began running at that point, and that summary judgment was proper as Glenbrook's claims were time-barred.[1]

¶ 13 Finally, Glenbrook claims that the trial court abused its discretion in entering summary judgment because the statute of limitations did not begin to run until February 24, 2000, the date that findings of fact and conclusions of law were entered in the underlying RCHA case. This claim is waived. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa. R.A.P. 302(a). Our review of the record reveals that Glenbrook never raised this issue until filing its Amended Matters Complained of on Appeal on January 17, 2003. "A party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order." *Davis v. Woxall Hotel, Inc.,* 395 Pa.Super. 465, 577 A.2d 636, 639 n. 3 (1990) (citing *Commercial Credit Corp. v. Cacciatiore,* 343 Pa.Super. 430, 495 A.2d 540, 543 (1985)). A Rule 1925(b) statement of matters complained of on appeal is not a vehicle in which issues not previously asserted may be raised for the first time. It is, instead, the vehicle by which an appellant advises the trial court of the previously preserved issues that the appellant will advance on appeal so that the trial court may determine if it needs to write an opinion and to direct the trial court to the issues for which an opinion is needed. *See* Pa. R.A.P.1925(a) (opinion required "if the reasons for the order do not already appear of record"). Since this issue was not raised until after the summary judgment motion was granted and then only in response to a Rule 1925(b) order, it is waived. Moreover, pursuant to court order entered December 4, 2002, Glenbrook's 1925(b) Statement was due on December 18, 2002. We find no abuse of discretion by the trial court in its refusal to consider this untime-

---

1. Glenbrook argues that the trial court failed to consider this issue in its 1925(a) opinion. Appellant's Brief, at 17. However, we find that the trial court addressed this issue in its discussion of the equitable discovery exception. *See* Opinion, 4/29/03 at 6–7. We also note, that this Court may affirm the lower court's decision "on any ground, even one not considered by that court." *Commonwealth v. Lauro,* 819 A.2d 100, 105 n. 8 (Pa.Super.2003) (citation omitted).

ly statement and the issues contained therein. *See In re C.R.J.*, 801 A.2d 1261 (Pa.Super.2002) (finding of waiver affirmed when 1925(b) statement untimely filed); *but see Commonwealth v. Ortiz*, 745 A.2d 662, 663 (Pa.Super.2000) (trial court has discretion to address claim raised in late Rule 1925(b) statement and, if it does, Superior Court will not find waiver).

## III. CONCLUSION

¶ 14 We find that the occurrence rule and the discovery exception to that rule are the applicable rules to be applied in determining when the statute of limitations begins to run in legal malpractice actions. Applying those rules, we find that Glenbrook's malpractice claim against BBCB was time-barred when it was commenced. We find no evidence of fraud or concealment on the part of BBCB that would allow for the equitable tolling of the statute of limitations. Furthermore, the facts clearly established that Glenbrook learned of the possible malpractice in 1994, and therefore, the trial judge did not err in making a legal determination regarding the accrual of the statute of limitations, finding Glenbrook's claims time-barred, and granting BBCB's motion for summary judgment. We also find that Glenbrook's last issue was waived under Pa.R.A.P. 302(a) because it was not raised in the trial court. As the trial court neither abused its discretion nor committed any error of law, we are compelled to affirm the order granting summary judgment.

¶ 15 Order affirmed.