James O'KELLY, Appellee

v.

Michele S. DAWSON, Esquire, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 31, 2012.

Filed Feb. 19, 2013.

Bethann R. Lloyd, Pittsburgh, for appellant.

John E. Quinn, Pittsburgh, for appellee.

BEFORE: MUSMANNO, J., WECHT, J., and COLVILLE, J.*

OPINION BY WECHT, J.:

Michelle S. Dawson, Esquire ["Appellant"] appeals from the trial court's judgment entered following a jury verdict that found her negligent in her representation of James O'Kelly ["Husband"] in a divorce proceeding. Appellant was ordered to pay damages to Husband in the amount of $100,363.64. Following careful review, we affirm.

Appellant began representing Husband in a divorce proceeding in 2001. Notes of Testimony ["N.T."], 11/8–9/12, 50–51. In May 2002, Appellant and the lawyer for Husband's former wife ["Wife"] began negotiating toward a spousal and child support agreement. *Id.* at 53–54. The parties tentatively agreed that Husband would pay alimony for three years at a rate of $1,750 per month for the first year, $1,550 per month for the second year, and $1,350 per month for the third year. *Id.* at 56–57. The parties also agreed to divide the marital property, with 55% attributed to Wife and 45% attributed to Husband. *Id.* at 54. Thereafter, Husband began making payments consistent with this agreement. *Id.* at 77.

Wife's attorney memorialized this agreement in a May 3, 2002 letter. *Id.* at 54–55. However, the letter proposed also that: "This alimony shall be non-modifiable and shall not be affected by remarriage, cohabitation or the like." *Id.* at 56–57. Appellant told Husband that this new term was contrary to law and that he should not accept it. *Id.* at 58–60. While the parties continued to have discussions, they never signed a finalized alimony agreement. The parties did sign a consent order governing spousal support. N.T. at 67–70; Order, 11/14/02 at 1–4. That order reflected the payments upon which the parties had agreed. N.T. at 69; Order, 11/14/02, at 1–4.

Having failed to sign a final alimony agreement, the parties presented their dispute to a divorce master. After several hearings, the master issued a June 13, 2004 report and recommendation awarding Wife alimony in the amount of $1,000 each month for ten years, or until Wife remarried or cohabitated, or until either party died. N.T. at 81.

In the view of Appellant and Husband, this recommendation deviated sharply from the terms of the agreement that Appellant had negotiated with Wife's attorney. On Husband's behalf, Appellant filed timely exceptions to the master's recommendation. Appellant assured Husband

* Retired Senior Judge assigned to the Superior Court.

that the master's recommendation was "all wrong, totally wrong, ... totally incorrect." *Id.* at 82. Appellant testified: "I did not in this case think we had any chance of not winning that issue. We had already agreed to alimony. There was no question. I figured the master either forgot or whatever...." *Id.* at 240–41. Husband averred that he relied upon Appellant's legal advice. *See, e.g., id.* at 69, 94.

On October 4, 2004, the parties argued the exceptions before the trial court. On March 29, 2005, the court dismissed the exceptions, and adopted the master's recommendation. Husband decided not to appeal that decision. *Id.* at 85.

In 2007, Husband commenced a professional negligence action against Appellant. Husband alleged malpractice predicated mainly on Appellant's failure to effectuate the tentative alimony agreement set forth in the May 2002 correspondence. *See* Amended Complaint in Civil Action, at ¶¶ 8–19. Appellant filed a motion for summary judgment, asserting that Husband's claim was barred by the statute of limitations. The trial court denied the motion, stating that the equitable tolling and fraudulent concealment doctrines might be available in this case as defenses to the statute of limitations. Order, 10/23/09, at 1. The court ruled that decision as to whether the statute of limitations was tolled by either of these doctrines "requires a factual determination as to when [Husband] was able, in the exercise of reasonable diligence, to know of the injury and its cause."[1] *Id., citing Fine v. Checcio,* 582 Pa. 253, 870 A.2d 850 (2005).

On November 8 and 9, 2010, the case was tried to a jury.[2] After deliberations,

the jury found in favor of Husband and awarded him $100,363.64. The parties filed post-trial motions. In the post-trial motion relevant to this appeal, Appellant requested judgment notwithstanding the verdict ["JNOV"] on several grounds, including the two that she asserts on this appeal: (1) that Appellant's claim was barred by the statute of limitations; and (2) that the verdict was against the weight of the evidence. The trial court denied Appellant's motion. The trial court found that the statute of limitations was tolled by the equitable discovery doctrine until March 29, 2005, the date of the trial court order dismissing Appellant's exceptions and adopting the master's recommendation. As well, the court rejected Appellant's weight of the evidence claim. Appellant appealed, and timely filed a statement of errors complained of on appeal pursuant to Pa.R.A.P.1925(b).

On appeal, Appellant raises two questions for our review:

1. Whether an attorney can be held negligent for failing to finalize an alimony agreement when the spouses never agreed to all of the essential terms[?]

2. Whether the statute of limitations barred the legal malpractice action[?]

Appellant's Brief at 2.

■■■ Appellant's first question implicates her belief that the jury should have credited Appellant's testimony and that of her expert, John Patrick Smider, Esquire, over the testimony of Husband and Husband's expert, Ronald T. Conway, Esquire. Such a claim amounts to a challenge to the weight of the evidence. Our standard of review is well-settled:

---

1. During trial, Appellant asserted that the applicability of the statute of limitations should be decided by the Court, and not by the jury. N.T. at 123. The trial court did not express any disagreement with this view.

2. The judge who had ruled on exceptions had passed away, and trial of the professional negligence action was handled by a different jurist.

In evaluating a claim that a verdict is against the weight of the evidence, Pennsylvania courts employ a shocks-the-conscience litmus. The trial judge's authority to award a new trial on weight-of-the-evidence grounds is narrowly circumscribed on account of the principle that credibility questions are exclusively for the fact finder. The matter is couched as discretionary in the trial court, with its role in the assessment being afforded primacy in view of its substantially closer vantage to the evidentiary presentation as compared to that of an appellate court. Relief is available in an appellate court only if it can be said that the trial court acted capriciously or palpably abused its discretion.

*Hatwood v. Hosp. of the Univ. of Pennsylvania,* 55 A.3d 1229, 1238 (Pa.Super.2012).

Appellant argues that the parties did not come to an understanding as to all of the essential terms of the agreement, and that Appellant cannot be faulted for failing to finalize an agreement that the parties failed to reach. In particular, Appellant contends, the parties did not agree upon modifiability in the event of death. The agreement therefore could not be concluded. At trial, Appellant claimed that, in an April 2003 settlement agreement draft, she attempted to finalize the agreement as best she could. N.T. at 225–29. Appellant's expert, Mr. Smider, testified that, if a material term remained in dispute, no agreement could be finalized. *I.d.* at 276–77.

The trial court reviewing the master's recommendation did not refer to any lack of agreement as to modifiability after death. That court noted that the written exchanges between the parties did not specify a termination date for alimony payments. Order, 3/27/05, at 2. The trial court referred to the letter that Wife's counsel sent on May, 3, 2002, and to the November 14, 2002 support order, but made no reference to any April 2003 settlement agreement drafted by Appellant.

Husband's trial expert, Mr. Conway, opined that Appellant committed malpractice by not drafting an alimony agreement that included both the amount and the duration of alimony. *Id.* at 158–61. Husband presented evidence to contradict Appellant's testimony that she created any draft agreement in April 2003. Indeed, Husband testified that he never saw any such draft agreement. *Id.* at 96–98. Further, the trial evidence did not include any response from Wife's attorney to this draft agreement. Moreover, this draft agreement lacked a cover letter, a feature that accompanied all other correspondence between the parties contained in evidence. *Id.* at 259; Trial Court Opinion ["T.C.O."], 4/8/12, at 7–8. The provenance of the 2003 document was thereby called into question. *See* T.C.O. at 7–8.

It appears that the jury found the testimony presented by Husband and his expert to be more compelling and credible than that of Appellant and her expert. The jury was presented with conflicting evidence. It made the credibility determinations that were required of it. The jury apparently decided that the parties had in fact agreed upon the essential terms of alimony and that Appellant failed properly to finalize that agreement. The judge who presided at trial found that there was enough evidence of record to support the jury's verdict, such that the verdict did not "shock the conscience" of that judge. *Hatwood,* 55 A.3d at 1238. Based on our deferential review of the record, we are constrained to conclude that the trial judge did not abuse her discretion in rendering that finding. It is not our role as appellate judges to retry the facts or to attempt to

put ourselves into the jury's place. Indeed, we may not do so.

Appellant next argues that Husband's claim was barred by the statute of limitations. Appellant raised this issue in a motion for summary judgment and in a post-trial motion. In denying Appellant's post-trial motion, the trial court found that the statute of limitations was tolled by the equitable discovery doctrine until March 29, 2005, the date of the trial court order adopting the master's recommendation. Appellant requested that this issue not go before the jury, but instead be decided by the trial court as a matter of law. N.T. at 123. The trial court granted Appellant's request, and then ruled that, as a matter of law, the statute of limitations did not bar Husband's claim.

■ Our standard of review of a trial court order denying a JNOV motion is as follows:

A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

*Wilson v. Transp. Ins. Co.*, 889 A.2d 563, 569 (Pa.Super.2005) (citing *Buckley v. Exodus Transit & Storage Corp.*, 744 A.2d 298, 304–05 (Pa.Super.1999) (internal citations omitted)).

■ Appellant argues that the trial judge erred in denying Appellant's JNOV motion, because no two reasonable minds could disagree that the statute of limitations barred Husband's claim. Appellant's Brief at 22. In the alternative, Appellant argues that the trial judge erred in not sending the issue to the jury to make a factual determination as to Husband's reasonable diligence in discovering Appellant's alleged error. While Appellant purported to preserve this alternative argument in her post-trial motion, Appellant's Post Trial Motion, 3/24/11 at 5, she made the opposite argument during trial. During trial, Appellant asserted that the statute of limitations issue should be decided by the trial court, arguing that no factual determination was required. N.T. at 123; Appellant's Trial Brief at 2 ("For the reasons that follow, Defendant requests the Court to determine that June 13, 2004 is the commencement of the statute of limitations period as a matter of law and enter judgment in favor of Defendant."). Indeed, the question of when a statute of limitations runs is a matter typically decided by the trial judge as a matter of law. "This Court has held that the determination of when the statute of limitations has run on a claim for legal malpractice is usually a question of law for the trial judge, unless the issue involves a factual determination." *Glenbrook Leasing Co. v. Beausang*, 839 A.2d 437, 444 (Pa.Super.2003) (citing *Fiorentino v. Ra-*

poport, 693 A.2d 208, 219 (Pa.Super.1997)).

It is undisputed that the statute of limitations in this case is two years. 42 Pa.C.S.A. § 5524(7). "In actions for legal malpractice, Pennsylvania uses the occurrence rule to determine when the statute of limitations begins to [run]. Under this rule, 'the statutory period commences upon the happening of the alleged breach of duty.'" *Glenbrook Leasing Co.*, 839 A.2d at 441 (quoting *Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger*, 449 Pa.Super. 367, 674 A.2d 244, 246 (1996)). Husband never specifies the date of the "occurrence" of the alleged breach of duty. However, we can assume that he concedes that the alleged breach must have occurred more than two years ago, because he argues that the equitable tolling doctrine applies.

Equitable tolling is permitted under the discovery rule only when, despite the exercise of due diligence, the injured party is unable to know of the injury or its cause. *Id.* Appellant agrees that equitable tolling applies to the instant case. However, she argues that Husband's date of discovery was not March 29, 2005, the date that the trial court affirmed the master's recommendation, but rather June 13, 2004, the date that Husband received the recommendation from the master that rejected the parties' proposed alimony agreement. Appellant asserts that Husband was under a duty to exercise all reasonable diligence to inform himself of the facts and circumstances of his case and to institute this malpractice suit within the prescribed statutory period. Appellant's Brief at 20 (citing *Pocono International Raceway, Inc. v. Pocono Produce, Inc.*, 503 Pa. 80, 468 A.2d 468, 471 (1983) (citations omitted)). In Appellant's view, Husband's putative claim expired on June 13, 2006, well before he initiated this litigation on February 28, 2007. Appellant argued before the trial court and argues again before us that, on June 13, 2006, in the exercise of reasonable diligence, Husband should have known that "whatever agreement [Husband] thought was in place with his wife had been rejected in its entirety." Appellant's Brief at 21.

Whether the discovery rule applies "ordinarily" requires the jury to make a factual determination as to whether the plaintiff acted with reasonable diligence, unless the facts are so clear that reasonable minds cannot disagree on the issue. *Fine*, 870 A.2d at 858–59. Where reasonable minds would not differ, the court makes the determination. *Id.* Our Supreme Court has thoroughly explained the roles of the trial judge and trial jury in this context, as follows:

> As the discovery rule has developed, the salient point giving rise to its application is the inability of the injured, despite the exercise of reasonable diligence, to know that he is injured and by what cause. We have clarified that in this context, reasonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the facts upon which his right to recovery is premised. As we have stated: "'[T]here are [very] few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful. This is what is meant by reasonable diligence.'" Put another way, "[t]he question in any given case is not, what did the plaintiff know of the injury done him? [B]ut, what might he have known, by the use of the means of information within his reach, with the vigilance the law requires of him?" While reasonable diligence is an objective test, "[i]t is sufficiently flexible ... to take into ac-

count the difference[s] between persons and their capacity to meet certain situations and the circumstances confronting them at the time in question." Under this test, a party's actions are evaluated to determine whether he exhibited "those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interest and the interest of others."

Therefore, when a court is presented with the assertion of the discovery rule[']s application, it must address the ability of the damaged party, exercising reasonable diligence, to ascertain that he has been injured and by what cause. Since this question involves a factual determination as to whether a party was able, in the exercise of reasonable diligence, to know of his injury and its cause, ordinarily, a jury is to decide it. Where, however, reasonable minds would not differ in finding that a party knew or should have known on the exercise of reasonable diligence of his injury and its cause, the court determines that the discovery rule does not apply as a matter of law.

*Id.* (internal citations omitted).

Appellant argued before the trial court that no two reasonable minds could differ in finding that Husband knew or should have known that Appellant potentially committed malpractice as of the date of the master's recommendation, June 13, 2004. Therefore, Appellant urged, the issue need not go before the jury. Appellant's argument prevailed as to process but failed as to substance: the trial court agreed to withhold the issue from the jury, but then ruled in favor of Husband on that issue.

■ Appellant cannot claim, *post hoc,* that the trial court erred in employing the decision-making process that Appellant re-

quested. "A decision to pursue one argument over another carries the certain consequence of waiver for those arguments that could have been raised but were not." *Walsh v. Borczon,* 881 A.2d 1, 6 (Pa.Super.2005) (quoting *Harber Philadelphia Ctr. City Office Ltd. v. LPCI Ltd. P'ship,* 764 A.2d 1100, 1105 (Pa.Super.2000)). Appellant cannot now be heard to assert that the trial court erred in granting Appellant's request that the limitations issue be reserved for the court. Appellant waived this line of argument.

The trial court does not explicitly state whether it ruled that the date of discovery was March 29, 2005 as a matter of law, or whether it made a factual finding regarding Husband's exercise of reasonable diligence in arriving at this conclusion. In its opinion, the trial court states that Husband reasonably relied upon Appellant's assurance that the trial court would reject the master's report. T.C.O. at 5. Appellant advised Husband that the trial court would order alimony to reflect the parties' proposed alimony agreement. *Id.* Husband testified that he relied upon Appellant's advice, and that it was not until Appellant's prediction failed to materialize that Husband was aware that Appellant may have committed legal malpractice. N.T. at 69, 94. Ultimately, the trial court determined that Husband could not have known that malpractice occurred until he received the trial court's alimony order. T.C.O. at 6. In reaching this decision, the trial court found it relevant that a master's recommendation is advisory only and does not have the binding effect of a trial court's alimony order. *Id.* at 5 (citing *Kohl v. Kohl,* 387 Pa.Super. 367, 564 A.2d 222, 224 (1989)). The trial court explained that "[Appellant's] argument that her client should not have believed her [that the trial court would correct the master's 'error'] and should have realized that he

and his wife never reached a final alimony agreement is without merit." T.C.O. at 5. Based on the advisory nature of the master's recommendation, and the undisputed fact that Husband relied upon Appellant's legal advice, the trial court determined that the date of discovery was March 29, 2005.

■ We believe that, in making this decision, the trial court necessarily made a factual finding as to Husband's reasonable diligence. Thus, Appellant's argument that no two reasonable minds could disagree as to the discovery date is unavailing. Had this issue gone before a jury, it is possible that the jury could have found that a reasonable person in these circumstances would have realized that his lawyer possibly had committed malpractice when the master's recommendation did not reflect the proposed alimony agreement, despite the lawyer's confidence that it would. However, a case is "not a proper subject for JNOV so long as the evidence allows reasonable minds to differ on the outcome." *Helpin v. Trustees of Univ. of Pennsylvania*, 969 A.2d 601, 615 (Pa.Super.2009) (citing *Schindler v. Sofamor, Inc.*, 774 A.2d 765, 771 (Pa.Super.2001)). At Appellant's request, the issue did not go before the jury. She cannot now argue that the trial court's grant of her request was in error. Appellant's arguments are unavailing.

"If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case." *Wilson*, 889 A.2d at 569 (citing *Buckley*, 744 A.2d at 305 (internal citations omitted)). This case was not a proper subject for JNOV. The trial court's denial of that request was not erroneous.

Judgment affirmed. Jurisdiction relinquished.

COLVILLE, J. files a Dissenting Opinion.

## DISSENTING OPINION BY COLVILLE, J.:

I dissent. I would find that the trial court erred in its ruling on the statute of limitations.

As we have explained:

In reviewing a motion for judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, [a] judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. Further, a judge's appraisement of evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations.

There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant[.] With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Fletcher–Harlee Corp. v. Szymanski,* 936 A.2d 87, 93 (Pa.Super.2007) (citations omitted).

Further, the following law is applicable. "In actions for legal malpractice, Pennsylvania uses the occurrence rule to determine when the statute of limitations begins to [run]. Under this rule, 'the statutory period commences upon the happening of the alleged breach of duty.'" *Glenbrook Leasing Co. v. Beausang,* 839 A.2d 437, 441 (Pa.Super.2003) (quoting *Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger,* 449 Pa.Super. 367, 674 A.2d 244, 246 (1996)). Pennsylvania law requires strict application of the limitations period, allowing equitable tolling under the "discovery rule" only when the injured party is unable to know of the injury or its cause, despite the exercise of reasonable diligence. *Id.*

As this Court has explained:

... [W]hen asserting the discovery rule as tolling the statute of limitations, the following standard of reasonable diligence must be satisfied:

The standard of reasonable diligence is an objective or external one that is the same for all individuals.... "[T]he statute is tolled only if a reasonable person in the plaintiff's position would have been unaware of the salient facts." In defining reasonable diligence, [our] courts have stated "[t]here are very few facts which diligence cannot discover, but there must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful...." [W]ith respect to knowledge of a claim, "plaintiffs need not know that they have a cause of action, or that the injury was caused by another party's wrongful conduct, for once a plaintiff possesses the salient facts concerning the occurrence of his injury and who or what caused it, he has the ability to investigate and pursue his claim."

*Haggart v. Cho,* 703 A.2d 522, 528 (Pa.Super.1997) (quoting *A. McD. v. Rosen,* 423 Pa.Super. 304, 621 A.2d 128, 131 (Pa.Super.1993)).

The relevant facts in this case were undisputed. In June of 2004, Appellee had a report authored by a neutral master after hearing the parties' arguments and evidence on the issue of alimony over the course of four hearings. Therein, the terms of the alleged alimony agreement were absent; in their stead was a recommendation that Appellee be obligated to pay significantly more alimony than he would have under the terms of the May 3, 2002, letter. Appellant assured Appellee that that there was an agreement and that he would ultimately prevail. The trial court made a legal conclusion that, in June, 2004, Appellee had insufficient facts to awaken inquiry in a reasonable person. I believe that legal conclusion was in error; I would thus find that, as a matter of law, the discovery rule did not operate to toll the statute of limitations and the two-year statute of limitations had run by the time Appellee instituted his suit in 2007.

Accordingly, I would vacate the judgment, reverse the order denying Appellant's motion for judgment notwithstanding the verdict and remand for entry of judgment in favor of Appellant.