J-S15033-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DIANE M. MELLOW | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ARTHUR F. SILVERBLATT, ESQUIRE AND SILVERBLATT & ASSOCIATES | |
| Appellee | No. 1385 MDA 2014 |

Appeal from the Order Entered August 5, 2014
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 3780-2010

BEFORE:  LAZARUS, J., WECHT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                     **FILED MAY 01, 2015**

Appellant Diane Mellow appeals from the order of the Luzerne County Court of Common Pleas entering summary judgment in favor of Arthur F. Silverblatt, Esquire, and his law firm Silverblatt & Associates (collectively "Appellees").  After careful review, we affirm.

The underlying facts and procedural posture of this matter are relatively straightforward.  In January of 2006, Appellant engaged Appellees to represent her in divorce proceedings from her husband, then-state senator Robert J. Mellow.   The parties reached a marital settlement agreement that provided for, *inter alia*, monthly alimony payments supplemented by a portion of Mr. Mellow's pension payments upon his retirement.  The agreement also included a non-modification clause.  Despite her misgivings about the sufficiency of the alimony payments and Appellees'

representation, Appellant executed the marital settlement agreement on November 14, 2006. The court then terminated the marriage by a divorce decree entered on November 17, 2006.

In September 2008, Mr. Mellow sold for $350,000.00 a commercial property he had received through the marital settlement agreement that had been appraised at only $190,000.00 at the time of the agreement. After learning of the sale in the summer of 2009, Appellant filed[1] a Petition to Strike/Set Aside Marital Settlement Agreement,[2] which alleged Mr. Mellow had failed to disclose information relating to the value or potential value of the couple's marital and non-marital assets. Mr. Mellow filed preliminary objections. On December 1, 2009, the court granted Mr. Mellow's preliminary objections and dismissed Appellant's Petition to Strike/Set Aside Marital Settlement Agreement because Appellant failed to plead and prove extrinsic fraud.[3]

_____

[1] Marguerite Nealon, Esquire, represented Appellant during the challenge to the marital settlement agreement.

[2] Appellant originally filed a Petition to Modify/Increase Alimony on July 20, 2009, which she subsequently withdrew and replaced with a Petition to Strike/Set Aside Marital Settlement Agreement on July 24, 2009. On October 22, 2009, she filed an Amended Petition to Strike/Set Aside Marital Settlement Agreement.

[3] Appellant incorrectly claims that this "petition was denied due to the non-modification clause." Appellant's Brief, p. 7. The lower court's opinion granting the preliminary objections makes no mention of the non-modification clause. Instead, the lower court based its decision on Appellant's failure to prove extrinsic fraud, as indicated **supra**. **See**
*(Footnote Continued Next Page)*

In March 2010, Appellant commenced the instant legal malpractice lawsuit against Appellees.[4]  Appellant alleged professional negligence against Arthur Silverblatt personally, and Silverblatt & Associates under the doctrine of respondeat superior, for failing to conduct discovery that would have revealed the extent of the Mellows' property for the purpose of proper distribution, and for improperly acquiescing to Mr. Mellow and his counsel's demands.[5]  On February 11, 2013, Appellees filed an answer and new matter asserting that the applicable statute of limitations barred Appellant's claims.  On December 19, 2013, Appellees filed a motion for summary judgment based on the statute of limitations.  Appellant answered the summary judgment motion on January 21, 2014.  The trial court conducted a hearing on March 25, 2014 and granted Appellees' motion for summary judgment on July 10, 2014.  This appeal followed.[6]

_(Footnote Continued)_ _____

**generally** Opinion, No. 06-FC-40056 (C.P. Lackawanna County, filed December 1, 2009).

[4] On March 24, 2010, Appellant commenced the action by filing a writ of summons.  Appellant then filed a complaint on November 10, 2010.

[5] Appellant filed an amended complaint on January 14, 2013 that included the same two claims.  **See generally**, Amended Complaint.

[6] Upon order of the trial court, Appellant complied with Pa.R.A.P. 1925(b). The trial court, however, did not issue a Pa.R.A.P. 1925(a) opinion. Nevertheless, the certified record contains the trial court's July 10, 2014 Opinion and Order ("Opinion and Order"), which adequately explains the court's reasons for granting summary judgment.  Accordingly, we will decide this matter without remanding to the trial court for the filing of a Rule 1925(a) opinion.

Appellant raises the following issues for our review:

A.  Does a genuine issue of material fact exist as to whether or not Diane Mellow was on notice of Arthur Silverblatt's negligence as of November 14, 2006?

B.  Does a genuine issue of material fact exist as to whether or not Diane Mellow exercised due diligence in discovering Arthur Silverblatt's breach of his professional duty of care?

Appellant's Brief, p. 4 (footnotes omitted).

This Court's scope and standard of review on an appeal from the grant of a motion for summary judgment is well settled:

In reviewing an order granting summary judgment, our scope of review is plenary, and our standard of review is the same as that applied by the trial court.... An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo.*

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a prima facie cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

***Brandon v. Ryder Truck Rental, Inc.***, 34 A.3d 104, 107-108 (Pa.Super.2011).

- 4 -

We first address whether the applicable statute of limitations bars Appellant's claims. As we have explained:

> Once the prescribed statutory period for commencing a cause of action has expired, the complaining party is barred from bringing suit. Lack of knowledge, mistake or misunderstanding does not toll the running of the statute of limitations. The defense of statute of limitations is not a technical defense but substantial and meritorious. Mere delay, extended to the limit prescribed, is itself a conclusive bar. There is a strong policy in Pennsylvania courts favoring the strict application of statutes of limitation. It is the duty of a party asserting a cause of action to use all reasonable diligence to be properly informed of the facts and circumstances upon which a potential right of recovery is based and to institute suit within the prescribed statutory period.

*Booher v. Olczak*, 797 A.2d 342, 345 (Pa.Super.2002) (internal citations and quotations omitted).

The Judicial Code sets a two-year statute of limitations for legal malpractice claims. 42 Pa.C.S. § 5524. "In actions for legal malpractice, Pennsylvania uses the occurrence rule to determine when the statute of limitations begins to accrue. Under this rule, the statutory period commences upon the happening of the alleged breach of duty." *Glenbrook Leasing Co. v. Beausang*, 839 A.2d 437, 441 (Pa.Super.2003), *aff'd*, 881 A.2d 1266 (Pa.2005). "An exception to this rule is the equitable discovery rule which will be applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause." *Id.* (citation omitted). However, "[l]ack of knowledge, mistake or misunderstanding, will

not toll the running of the statute." ***Id.*** (citation omitted); ***see also Booher***, ***supra***.[7]

Here, at the latest, Appellees breached their duty to Appellant when she entered into the marital settlement agreement on November 14, 2006. Accordingly, she had until November 14, 2008 to timely file a legal malpractice lawsuit based on Appellees' representation. Appellant did not commence this action until March 24, 2010, more than sixteen months after expiration of the applicable limitations period. Therefore, absent an exception, this action is time-barred under the occurrence rule.

The equitable discovery rule does not rescue Appellant's action. Appellant claims she was not alerted to counsel's negligence until 2009, when she learned that her former husband sold a piece of commercial property he received via the marital property agreement in 2008 for an amount greatly exceeding the property's appraised value at the time of divorce. Appellant's testimony demonstrates, however, that she should have begun investigating counsel's performance in November 2006 but failed to do so.

---

[7] Fraud or concealment may also provide an exception to the statute of limitations in legal malpractice actions. ***See Glenbrook Leasing***, 839 A.2d at 443. Appellant does not allege fraud on the part of Appellees in this matter.

Appellant testified at her deposition that she believed Arthur Silverblatt was not doing his job in November 2006, when she signed the marital settlement agreement. In pertinent part, Appellant testified:

Q: Now you believe that somehow or other you were not given what you were entitled to in the divorce settlement, the property settlement; is that correct?

A: Yes.

Q: When did you first suspect that?

A: When I realized that the $2,500 [alimony] I was getting and whatever would be added to it would have to have income tax taken out of it. That was a big blow. And then the other thing was, that I was told that I had settled, that was it. He just said take this or take a chance and go to the master. So I figured I had to take that.

Q: When you signed the divorce property settlement, did you believe you were not getting what you were entitled to?

A: I believe that that's all I was going to be able to get, I had no choice.

Q: Did you believe that you should have got more?

A: Yes, I do. But I believe that I could not have. I was supposedly having a very competent, high profile, tough attorney to do everything. And if that's - -

Q: And did you - -

A: And I was up against somebody, that should have been realized, that this man was the top businessman in the state.

Q: And when you signed that agreement, did you think Mr. Silverblatt wasn't doing the job you hired him for?

A: I believed just what I said. He was a high profile attorney. And whether or not I liked it, [Mr. Mellow] said that was it or we would have to go to a master. I believed him in that way. But then I realized after that, I should have had more support.

Q: Did you believe at that time that [Mr. Mellow] somehow or other was causing Mr. Silverblatt to not do the job he should have been doing?

A: I believe that there was influence.

Q: At that time when you signed that agreement?

A: I believe he had influence over everybody. I believe that [Mr. Mellow] ran the whole divorce with [his attorney]. I believe that they were the ones that really got their way on everything. And I believe [Mr. Mellow's attorney] probably had somebody behind it because I did not believe in any way, shape or form that [Mr. Mellow's attorney] was a better attorney than Art Silverblatt. I really believed that Art Silverblatt was way above them.

Q: In terms of ability?

A: Ability, credibility, everything. I believe that he would be untouchable from anybody. But then I saw that this divorce was what I was going to get from this high profile state person. And here we go again.

Q: But even then when you signed the agreement, you believed that Mr. Silverblatt was not getting for you what you should have gotten?

A: I do believe that I had to take what I had or get less.

Q: Well, answer yes or no. Did you believe that Mr. Silverblatt was not doing the job he should have been doing to get you what you're entitled to? Yes or No?

A: Yes. And then it was confirmed by Marguerite [Nealon] and other attorneys.

Deposition Transcript, June 18, 2012 ("Deposition Transcript"), pp. 43-46.

Additionally, Appellant testified that she felt in November 2006 that Appellees were not adequately addressing her questions or protecting her interests. *See* Deposition Transcript, pp. 7-8. She also testified that she had concerns in 2006 that her husband's illicit activities might adversely

affect his pension (including her share thereof), but she did not discuss this issue with Attorney Silverblatt.[8] *Id.* at 34.

The trial court found that Appellant's testimony illustrated that she was on notice of Appellees' alleged negligence as early as November 14, 2006. *See* Opinion and Order, p. 3. The court further determined that, while Appellant may not have actually known of Appellees' negligence on November 14, 2006, "[s]he did know enough . . . to investigate those matters she was skeptical about so she could institute litigation within the [s]tatute of [l]imitations." *Id.* at 4. Based on Appellant's testimony and Pennsylvania's adherence to the occurrence rule of statute of limitations accrual in legal malpractice matters, the trial court ruled her action was time-barred:

> [Appellant] did not commence this suit until she obtained sufficient evidence [from which] she could conclude [Appellees] were negligent. That, however, is not the law. A person suspecting negligence has an obligation to investigate that possibility. [Appellant] did not.

Opinion and Order, p. 4. Accordingly, the trial court granted Appellees' motion for summary judgment.

---

[8] Following his retirement from the Pennsylvania Senate, federal authorities indicted Mr. Mellow on multiple mail fraud and tax evasion charges to which Mr. Mellow eventually pleaded guilty. Mr. Mellow's conviction forfeited his right to the pension. Accordingly, in 2012, Appellant no longer received the pension payments to which she had previously been entitled under the martial property agreement.

We agree with the trial court that the occurrence rule acts as a time-bar to Appellant's claims. **See Glenbrook Leasing**, **supra**. Nor does the equitable discovery exception to the occurrence rule apply. The record reveals that, despite suspecting before the execution of the marital property agreement in November 2006 that counsel had provided deficient representation, Appellant failed to investigate her suspicions until 2009, when she learned the price for which her husband had sold the commercial property that he received as part of their marital property agreement. Appellant should have begun investigating counsel's performance in 2006 when the parties executed the marital property agreement, as she believed at that time that the agreement was unsatisfactory and counsel's representation was deficient. Appellant's testimony that other attorneys later confirmed her suspicions about Appellees' deficient representation serves only to illustrate that, had she timely exercised due diligence, she could have commenced her legal malpractice suit within the limitations period. **See** Deposition Transcript, June 18, 2012, p. 46. Accordingly, Appellant's claim is time-barred.

Order affirmed.

Judge Wecht joins in the memorandum.

Judge Lazarus files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/1/2015