WACHOVIA BANK, N.A., Appellant

v.

Renee Lynne FERRETTI, Esq. and
Brown Brown Solt and
Ferretti, Appellees.

Superior Court of Pennsylvania.

Argued Aug. 28, 2007.
Filed Oct. 25, 2007.

Wilbur L. Kipnes, Philadelphia, for appellant.

Ronald F. Brien, Jr., Philadelphia, for appellees.

BEFORE: STEVENS, BENDER and KELLY, JJ.

OPINION BY BENDER, J.:

¶ 1 Wachovia Bank, N.A. ("Wachovia"), the plaintiff below, appeals from the October 5, 2006 order granting judgment on the pleadings in favor of the defendants, Renee Lynne Ferretti, Esq. ("Attorney Ferretti"), and her law practice, Brown, Brown, Solt & Ferretti (collectively, "Ferretti") in this legal malpractice case. The trial court concluded that Wachovia's claims of negligence and breach of contract against Ferretti were barred by the statute of limitations. For the following reasons, we affirm.

¶ 2 Wachovia commenced this action by filing a praecipe for writ of summons on September 9, 2005, followed by a complaint on January 18, 2006. However, to understand the issues in the instant case, it is first necessary to describe the history of the underlying case in which Wachovia alleges the malpractice occurred.

¶ 3 Specifically, in 1989, Attorney Ferretti represented Wachovia's predecessor in interest, Meridian Bank ("Meridian"), in connection with a commercial loan made to Brookside Partners ("Brookside"), a real estate development partnership, for construction of condominiums in Lehigh County. On June 12, 1989, Ralph R. Pisa-

ni ("Pisani"), one of Brookside's partners, agreed to act as a surety with respect to the loans made to the partnership. In 1990, Brookside defaulted on the loans. In 1991, Meridian confessed judgment against Brookside, Pisani, and other sureties. On December 23, 1991, Meridian filed a confession of judgment against Pisani in the amount of $6,327,075.66 in Lehigh County. On January 12, 1992, the Lehigh County judgment was transferred to Bucks County for execution against real property owned there by Pisani and his wife. Pisani contested the execution and judgment proceedings and, on August 4, 1992, Meridian and Pisani entered into a settlement agreement in which Pisani and his wife agreed to pay Meridian $160,000 in exchange for Meridian's agreement to "forever discharge" them from the confessed judgment.

¶ 4 In September of 1992, pursuant to Pisani's attorneys' request, Meridian, through Attorney Ferretti, filed a praecipe in Lehigh County indicating that the action was settled, discontinued, and ended, and also acknowledging satisfaction of the judgment. Attorney Ferretti also filed a praecipe in Bucks County, indicating that the action was settled, discontinued, and ended; however, she failed to have the Bucks County judgment marked "satisfied." (This failure to mark the Bucks County judgment as satisfied forms the basis of the legal malpractice claim in the instant case).

¶ 5 After trying to sell his home and apply for life insurance and a credit card, Pisani discovered that the Bucks County judgment had not been marked satisfied. Accordingly, Pisani initiated proceedings against Meridian on October 20, 1994, seeking liquidated damages pursuant to 42 Pa.C.S. § 8104.[1] In August of 1995, Pisa-

---

1. At the time Pisani filed his action for liqui- dated damages against Meridian, section

ni's counsel asked Attorney Ferretti to prepare a praecipe to have the Bucks County action marked satisfied, which she did. Indeed, Attorney Ferretti continued to represent Meridian in defending against Pisani's petition for liquidated damages and remained as co-counsel when Meridian engaged another law firm to defend against the petition in 1996.

¶ 6 On November 24, 1998, the Bucks County trial court denied Pisani's petition to assess liquidated damages, holding that because Meridian's judgment was not paid in full, Meridian was not required to mark the judgment satisfied. Pisani appealed to our Court and, on August 12, 1999, we reversed the Bucks County court's decision, indicating that "a judgment can be deemed satisfied ... by an agreement to accept a lesser amount as full payment." *Meridian Bank v. Pisani*, 12 EDA 1999, unpublished memorandum at 6, 745 A.2d 53 (Pa.Super. filed August 12, 1999). We found that the language of the release between Meridian and Pisani revealed that Meridian agreed to "forever discharge" Pisani from liability on the judgments entered in Lehigh County and Bucks County in exchange for Pisani's payment of $160,000. *Id.* at 8, 9. Although we concluded that all the requisites of section 8104 were met and that Pisani was entitled to liquidated damages, we remanded to the trial court for consideration of Meridian's affirmative defenses. On October 21, 1999, we denied Meridian's petition for reconsideration, and on April 13, 2000, the Supreme Court of Pennsylvania denied Meridian's petition for allowance of appeal. *Meridian Bank v. Pisani*, 563 Pa. 618, 757 A.2d 933 (2000).

¶ 7 On December 29, 2000, upon remand and in reliance on this Court's decision in *Pantuso Motors, Inc. v. CoreStates Bank, N.A.*, 745 A.2d 614 (Pa.Super.1999), the Bucks County trial court found merit to Meridian's affirmative defense that Pisani's action for liquidated damages under section 8104 was barred by a two-year statute of limitations. Pisani again appealed to our Court and, on October 2, 2001, we affirmed the trial court's decision dismissing Pisani's petition based on our decision in *Pantuso*. *Meridian Bank v. Pisani*, 790 A.2d 347 (Pa.Super.2001) (unpublished memorandum). Pisani filed a petition for allowance of appeal with our Supreme Court.

¶ 8 In the meantime, our Supreme Court reversed our Court's decision in *Pantuso*, finding instead that a six-year statute of limitations applied to actions under section 8104. *Pantuso Motors, Inc. v. CoreStates Bank, N.A.*, 568 Pa. 601, 798 A.2d 1277 (2002). Accordingly, the Supreme Court granted Pisani's petition for allowance of

---

8104, entitled "Duty of judgment creditor to enter satisfaction," provided as follows:

(a) **General rule.**—A judgment creditor who has received satisfaction of any judgment in any tribunal of this Commonwealth shall, at the written request of the judgment debtor, or of anyone interested therein, and tender of the fee for entry of satisfaction, enter satisfaction in the office of the clerk of the court where such judgment is outstanding, which satisfaction shall forever discharge the judgment.

(b) **Liquidated damages.**—A judgment creditor who shall fail or refuse for more than 30 days after written notice in the manner prescribed by general rules to comply with a request pursuant to subsection (a) shall pay to the judgment debtor as liquidated damages 1% of the original amount of the judgment for each day of delinquency beyond such 30 days, but not less than $250 nor more than 50% of the original amount of the judgment. Such liquidated damages shall be recoverable pursuant to general rules, by supplementary proceedings in the matter in which the judgment was entered.

42 Pa.C.S. § 8104 (1976). This statute was amended in 1997 to provide for, *inter alia*, a maximum of $2,500 in liquidated damages.

appeal and, citing their decision in *Pantuso,* issued an order on September 18, 2002, which reversed our Court's decision that had affirmed dismissal of Pisani's petition based on a two-year statute of limitations. *Meridian Bank v. Pisani,* 569 Pa. 576, 806 A.2d 1258 (2002). Our Supreme Court also remanded the matter to the Bucks County trial court for consideration of Meridian's remaining affirmative defenses. *Id.*

¶ 9 On June 30, 2003, upon remand, the Bucks County trial court considered Meridian's remaining affirmative defenses, found them to be without merit, and determined that Pisani was entitled to liquidated damages under section 8104. *Meridian Bank v. Pisani,* No. 92–00733–16–6, 2003 WL 25480520 (Bucks Cty.2003). Thus, the trial court entered an order, dated June 30, 2003, assessing liquidated damages against Meridian and its successors in interest in the amount of $3,163,537.83.

¶ 10 Meridian filed an appeal to our Court and, on June 21, 2004, we affirmed the Bucks County trial court's decision assessing liquidated damages against Meridian. *Meridian Bank v. Pisani,* 859 A.2d 843 (Pa.Super.2004) (unpublished memorandum). On July 7, 2005, our Supreme Court denied Meridian's petition for allowance of appeal. *Meridian Bank v. Pisani,* 583 Pa. 696, 879 A.2d 783 (2005).

¶ 11 As noted above, Wachovia (Meridian's successor in interest) commenced a legal malpractice action in Lehigh County against Attorney Ferretti and her law firm on September 9, 2005. In the complaint Wachovia filed on January 18, 2006, it asserted claims of professional negligence and breach of contract. On February 16, 2006, Ferretti filed an answer with new matter asserting, *inter alia,* that Wachovia's claims accrued no later than October of 1994 (*i.e.,* when Pisani commenced his action against Meridian) and were therefore barred by the statute of limitations.

¶ 12 On July 14, 2006, Ferretti filed a motion for judgment on the pleadings pursuant to Pa.R.Civ.P. 1034. After receiving Wachovia's response, the Court of Common Pleas of Lehigh County scheduled oral argument on the motion. Subsequently, on October 5, 2006, after hearing oral argument and considering the pleadings, the court entered an order granting Ferretti's motion for judgment on the pleadings and dismissing Wachovia's complaint with prejudice.

¶ 13 In the opinion filed in conjunction with its order, the trial court concluded that Wachovia's professional negligence claim, governed by a two-year statute of limitations, accrued on June 30, 2003, when the Bucks County trial court entered judgment in the amount of $3,163,537.83 against Wachovia's predecessor, in favor of Pisani. Trial Court Opinion (T.C.O.), 10/5/06, at 6. The court further concluded that the limitations period was not tolled during the time that Meridian's appeals from the June 30th judgment were pending. *Id.* Thus, since Wachovia commenced its malpractice action on September 9, 2005, beyond the two-year limitations period, the trial court concluded that this claim was barred. *Id.* at 7.

¶ 14 With regard to Wachovia's breach of contract claim, governed by a four-year statute of limitations, the trial court determined that Attorney Ferretti's failure to mark the Bucks County action as "satisfied" in September of 1992 constituted a breach of contract with the bank. *Id.* at 8. However, the court further concluded that "it also could be reasonable to assume that the Bank did not know of the breach until Pisani filed his suit on October 20, 1994." *Id.* Thus, the trial court determined that the statute of limitations for the breach of contract claim began to run either in Sep-

tember of 1992 or in October of 1994, but that, either way, Wachovia's action, filed in September of 2005, was not commenced until well-after the expiration of the four-year limitations period. *Id.* Accordingly, the court also dismissed this claim. *Id.*

¶ 15 Wachovia filed a timely notice of appeal on November 1, 2006. Pursuant to the trial court's order, Wachovia filed a timely statement of matters complained of on appeal in which the issues presented in this appeal were properly raised. *See* Pa. R.A.P. 1925(b).

¶ 16 Wachovia presents the following two issues in the "Statement of the Questions Involved" portion of its brief:

1. Did the court below err in holding that the statute of limitations on an attorney malpractice claim based on breach of contract began to run at the time of the attorney's misconduct, rather than the much later date on which the court below found that the client had incurred actual harm, which was also the date on which the court held that the statute of limitations began to run on the attorney malpractice claim based on professional negligence?

2. Did the court below err in holding that the statute of limitations on an attorney malpractice claim was not tolled during the pendency of the client's appeal of the judgment entered in the underlying action in which the misconduct occurred?

Wachovia's brief at 3 ("answers" omitted).

 ¶ 17 We first note that Pennsylvania Rule of Civil Procedure 1034 governs motions for judgment on the pleadings and provides that "[a]fter the pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for judgment on the pleadings." Pa. R.Civ.P. 1034(a). Additionally, we note

the following scope and standard of review:

> Appellate review of an order granting a motion for judgment on the pleadings is plenary. The appellate court will apply the same standard employed by the trial court. A trial court must confine its consideration to the pleadings and relevant documents. The court must accept as true all well pleaded statements of fact, admissions, and any documents properly attached to the pleadings presented by the party against whom the motion is filed, considering only those facts which were specifically admitted.

*Lewis v. Erie Ins. Exchange,* 753 A.2d 839, 842 (Pa.Super.2000) (quotation omitted). "We will affirm the grant of such a motion only when the moving party's right to succeed is certain and the case is so free from doubt that the trial would clearly be a fruitless exercise." *Holt v. Lenko,* 791 A.2d 1212, 1214 (Pa.Super.2002) (quotation omitted).

*Aquilino v. Philadelphia Catholic Archdiocese,* 884 A.2d 1269, 1275 (Pa.Super.2005). In other words, "[a] motion for judgment on the pleadings is similar to a demurrer. It may be entered when there are no disputed issues of fact and the moving party is entitled to judgment as a matter of law." *Consolidation Coal Co. v. White,* 875 A.2d 318, 325 (Pa.Super.2005) (citations omitted).

 ¶ 18 Preliminarily, we also recognize that "[a]n action for legal malpractice may be brought in either contract or tort." *Garcia v. Community Legal Servs. Corp.,* 362 Pa.Super. 484, 524 A.2d 980, 982 (1987). The elements of a legal malpractice action, sounding in negligence, include: (1) employment of the attorney or other basis for a duty; (2) failure of the attorney to exercise ordinary skill and knowledge;

and (3) that such failure was the proximate cause of the harm to the plaintiff. *Bailey v. Tucker*, 533 Pa. 237, 621 A.2d 108, 112 (1993). With regard to a breach of contract claim, "an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large." *Id.* at 115. *See also Gorski v. Smith*, 812 A.2d 683, 694 (Pa.Super.2002) (citing *Bailey* and noting that "when an attorney enters into a contract to provide legal services, there automatically arises a contractual duty on the part of the attorney to render those legal services in a manner that comports with the profession at large"). Moreover, it is undisputed that the two-year limitations period applies to the negligence claim and the four-year limitations period applies to the breach of contract claim. 42 Pa.C.S. §§ 5524(3), 5525. Additionally, we note that, to avoid waiver of either claim, Wachovia had to assert them together in one action, because the claims arose from the same "transaction or occurrence" against the "same person." Pa.R.Civ.P. 1020(d). *See also D'Allessandro v. Wassel*, 526 Pa. 534, 587 A.2d 724, 726 (1991) (indicating that actions in the nature of trespass or assumpsit arising from same occurrence must be joined).

¶ 19 Essentially, in its first issue, Wachovia argues that actual loss is a required element of both its breach of contract and malpractice claims, and that both claims are premised on the same conduct and seek identical damages. Thus, according to Wachovia, the trial court should have determined that the date on which *both* its causes of action accrued was June 30, 2003, *i.e.*, when Wachovia suffered *actual loss* by entry of the judgment of over three million dollars in favor of Pisani. Although the trial court determined that the negligence claim accrued on that date, it found that the breach of contract claim accrued either in September of 1992 or in August of 1994, as described above. Yet, Wachovia asserts that it[2] had successfully defended the Pisani action until June 30, 2003, and, therefore, it should not have been expected to bring either claim against its attorney during the time that it prevailed in the underlying matter. Additionally, in its second issue, Wachovia argues that, because it did not suffer an "actual loss" until the judgment in the Pisani case was affirmed on appeal, the statute of limitations on its legal malpractice claim should have been tolled until the appeals period concluded, *i.e.*, until July 7, 2005, when the Supreme Court of Pennsylvania denied Wachovia's petition for allowance of appeal from the underlying judgment in favor of Pisani. As both issues are premised on Wachovia's contention that "actual loss" is required to trigger the statute of limitations in their legal malpractice case against Ferretti, we will address both issues concurrently.

¶ 20 In support of its position that actual loss is a required element of both claims, Wachovia cites *Rizzo v. Haines*, 520 Pa. 484, 555 A.2d 58 (1989), for the proposition that "[c]learly, 'when it is alleged that an attorney has breached his professional obligations to his client, an essential element of the cause of action, whether the action be denominated in assumpsit or trespass, is proof of actual loss.'" Wachovia's brief at 16 (quoting *Rizzo*, 555 A.2d at 68) (quoting *Duke & Co. v. Anderson*, 275 Pa.Super. 65, 418 A.2d 613, 617 (1980)). *See also Schenkel v. Monheit*, 266 Pa.Super. 396, 405 A.2d 493, 494 (1979) ("The mere breach of a professional duty, causing only

**2.** Rather than continuing to reference Meridian or Wachovia's predecessor in interest, we shall, from this point forward, refer to Wachovia as the litigant when addressing the Pisani matter.

nominal damages, speculative harm, or the threat of future harm not yet realized does not suffice to create a cause of action for negligence. Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice." (citation omitted)). Based on this proposition, Wachovia argues that actual loss was required before it could bring both its legal negligence and breach of contract causes of action and that, if it had brought its suit against Ferretti prior to the time that actual loss was incurred, *i.e.*, prior to the time judgment was entered in Pisani's favor, then its action would be "premature" and "Ferretti surely would have moved to dismiss on the ground that [Wachovia] could not state a claim because [Wachovia] at that point had no damages, and that motion in all likelihood would have been granted." Wachovia's brief at 17.

¶ 21 However, the "[t]he test of whether damages are remote or speculative has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of **whether there are identifiable damages**.... Thus, **damages are speculative only if the uncertainty concerns the fact of damages rather than the amount.**" *Rizzo*, 555 A.2d at 68 (emphasis added, citation omitted). For example, in *Liberty Bank v. Ruder*, 402 Pa.Super. 561, 587 A.2d 761, 762–63 (1991), the trial court dismissed, as premature, the plaintiff-bank's legal malpractice action without prejudice to the plaintiff-bank's right to reinstate their action when a loss was sustained in the underlying action. The plaintiff-bank had alleged that, were it not for the defendant-attorney's negligence, it would not have lent $1,000,000 to a debtor who later defaulted. *Id.* at 765. We reversed the trial court's decision that had dismissed the legal malpractice action

as premature. Even though the underlying litigation with the debtor had not been concluded at the time the plaintiff-bank filed their legal malpractice action, the damages they alleged were not speculative. We reiterated that "[d]amages are speculative only if the uncertainty concerns the fact of the damages rather than the amount." *Id.* (citation omitted). Thus, we concluded that, despite the lack of resolution in the underlying case, the plaintiff-bank had "successfully stated a cause of action which, if proven, would entitle them to relief" and that "[i]t is unnecessary for [the plaintiff-bank] to prove a specific damage amount at this preliminary stage of the proceedings." *Id.*

¶ 22 Moreover, the trigger for the accrual of a legal malpractice action, for statute of limitations purposes, is not the realization of actual loss, but the occurrence of a breach of duty. Pennsylvania law provides that:

> the occurrence rule is used to determine when the statute of limitations begins to run in a legal malpractice action. **Under the occurrence rule, the statutory period commences upon the happening of the alleged breach of duty.** *Bailey v. Tucker*, 533 Pa. 237, 251, 621 A.2d 108, 115 (1993). An exception to this rule is the equitable discovery rule which will be applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. *Pocono [International] Raceway v. Pocono Produce, Inc.*, 503 Pa. 80, 85, 468 A.2d 468, 471 (1983). Lack of knowledge, mistake or misunderstanding, will not toll the running of the statute. *Id.* 503 Pa. at 85, 468 A.2d at 471.

*Robbins & Seventko Orthopedic Surgeons, Inc. v. Geisenberger*, 449 Pa.Super. 367, 674 A.2d 244, 246–47 (1996) (emphasis added). Pennsylvania favors strict application of the statutes of limitation. *Glenbrook*

*Leasing Co. v. Beausang*, 839 A.2d 437, 441 (Pa.Super.2003). Accordingly, the statute of limitations in a legal malpractice claim begins to run when the attorney breaches his or her duty, and is tolled only when the client, despite the exercise of due diligence, cannot discover the injury or its cause.

¶ 23 For example, in *Robbins*, the plaintiff hired the defendant law firm (the "defendant-firm") in 1976 to incorporate the plaintiff's surgical practice (the "plaintiff-practice") and, in 1977, the defendant-firm prepared and filed an employee pension plan with the Internal Revenue Service (IRS). *Robbins*, 674 A.2d at 245. On May 4, 1983, after the defendant-firm was no longer representing the plaintiff-practice, the IRS informed the plaintiff-practice that their pension plan failed to qualify and that deductions made to the plan from 1976 through 1979 would be disallowed. *Id.* The plaintiff-practice hired new counsel and an accountant to file an administrative appeal with the IRS. *Id.* The plaintiff-practice entered into a settlement with the IRS on October 8, 1986, whereby the plaintiff-practice signed a waiver and the IRS agreed to accept amendments to the plan for 1978 and 1979, but not for the preceding two years. *Id.* The IRS notified the defendant-firm, in February of 1986, regarding the problem with the pension plan. *Id.* The defendant-firm informed the plaintiff-practice that they believed that the IRS's objections to the plan would be easy to amend, and the defendant-firm, with the plaintiff-practice's consent, hired a second firm to negotiate on the plaintiff-practice's behalf. *Id.* The second firm notified the defendant-firm on January 21, 1988, that the IRS was precluding the plaintiff-practice from amending the plan, due to the waiver that the plaintiff-practice had agreed to in October of 1986. *Id.* The plaintiff-practice commenced a legal malpractice case against the defendant-firm on December 22, 1989. *Id.*

¶ 24 Our Court applied the occurrence rule to determine that the breach of the defendant-firm's duty occurred in 1976 and 1977, when the defendant-firm filed the flawed pension plan with the IRS. *Id.* at 248. However, in applying the discovery rule, our Court determined that the plaintiff-practice's legal malpractice cause of action was tolled until the plaintiff-practice learned of the injury caused by the defendant-firm's negligence, which was on May 4, 1983, when the IRS notified them that the pension deductions would be disallowed. *Id. See also, e.g., Bailey*, 621 A.2d at 116 (holding that statute of limitations on criminal malpractice complaint began to run when defendant filed a post-conviction petition alleging ineffective assistance of counsel because, by that point, he was "clearly on notice of [his attorney's] alleged dereliction"). Thus, because the plaintiff-practice did not commence their legal malpractice suit until over six years after discovering the injury, our Court concluded that the statute of limitations barred their claim. *Robbins*, 674 A.2d at 248.

¶ 25 Wachovia's "actual loss" argument was also rejected in *Garcia v. Community Legal Servs. Corp.*, 362 Pa.Super. 484, 524 A.2d 980 (1987). In that case, we recognized that, in some other jurisdictions, "the statute of limitations on a malpractice claim accrues at the time of the damage[,]" such as at the time when a judgment is entered in the underlying action. *Id.* at 986. We further noted that, in such jurisdictions, the statute may be tolled during the appeals period because "[i]f an appeal suspends the rights of the parties, that judgment is not yet final and enforceable. Therefore, the limitation period should arguably be suspended until the appeal is adjudicated and the party may enforce his

rights." *Id.* However, we stated that this is not the law in Pennsylvania. We reiterated that, in Pennsylvania, the occurrence rule (*i.e.,* the occurrence of the breach of a duty) governs when the statute of limitations begins to run in a legal malpractice action, and the statute of limitations "is tolled only until the injured party should reasonably have learned of this breach." *Id.* Accordingly, we rejected the plaintiff's argument that the pendency or potential pendency of an appeal in the underlying case would toll the statute of limitations in the legal malpractice action. *Id.*

▮▮▮▮▮ ¶ 26 Applying the occurrence rule in the instant case, Wachovia's legal malpractice and breach of contract causes of action against Ferretti accrued at the time Attorney Ferretti allegedly breached a duty owed to Wachovia when she failed to mark the Bucks County judgment against Pisani "satisfied," which failure allegedly occurred on September 8, 1992. However, viewing the facts in the light most favorable to Wachovia, we will assume that Wachovia, despite the exercise of due diligence, could not have reasonably been aware of this alleged breach until October 20, 1994, *i.e.,* the date when Pisani initiated proceedings against Wachovia for liquidated damages under section 8104.[3] Indeed, by this point in time, the fact of damages allegedly suffered by Wachovia were "identifiable" as they were asserted in Pisani's liquidated damages claim. Thus, pursuant to the discovery rule, the statute of limitations for the legal malpractice action against Ferretti was tolled until October 20, 1994. Accordingly, the two-year statute of limitations in which to commence a professional negligence action

against Ferretti expired on October 20, 1996, and the four-year statute of limitations in which to commence a breach of contract action against Ferretti expired on October 20, 1998 (keeping in mind that to avoid waiver of either claim, both causes of action would have to be joined pursuant to Pa.R.Civ.P. 1020(d)). In any event, since Wachovia did not initiate either claim against Ferretti until September 9, 2005, Wachovia's legal malpractice suit is barred by the statute of limitations.

▮▮▮▮▮ ¶ 27 We recognize Wachovia's public policy arguments including their argument that, if the statute of limitations is to accrue upon the breach of a duty, a plaintiff in a legal malpractice action would be forced to take competing positions while defending the underlying claim and prosecuting their own legal malpractice action premised on that underlying claim. *See* Wachovia's brief at 17–18. Although we recognize this potential dilemma, the overriding public policy concern is that not commencing legal malpractice actions in a timely fashion results in stale claims:

> [t]he purpose of the statute would not be served if an attorney is kept in a state of breathless apprehension while a former client pursues appeals from the trial court, to the Court of Appeal, to the Supreme Court and then, if the client has the money and energy, to the United States Supreme Court, during which time memories fade, witnesses disappear or die, and evidence is lost.

*Robbins,* 674 A.2d at 248 (citation omitted). In the instant case, when Wachovia commenced their legal malpractice action

---

**3.** Wachovia admits that it was aware of Attorney Ferretti's alleged dereliction in her failure to mark the Bucks County action "satisfied" when Pisani filed his petition for liquidated damages in 1994. *See* Wachovia's brief at 12 ("[Wachovia] was aware in 1994 that Ferretti

had not caused the Bucks County Judgment and Attachment to be marked satisfied because that was the basis of Pisani's petition to assess liquidated damages under 42 Pa.C.S. § 8104.").

against Ferretti, almost eleven years had elapsed from the time Pisani filed his suit for liquidated damages. Extending the statute of limitations to such a degree would not serve the policy underlying statutes of limitation. *See also Gustine Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc., L.P.*, 577 Pa. 14, 842 A.2d 334, 346 (2004) ("The purpose of these limitation periods is to expedite litigation and thus discourage delay and the presentation of stale claims which may greatly prejudice the defense of such claims. In light of the important purpose served by limitations periods, this Court has held that statutes of limitation are to be strictly construed." (citation and internal quotation marks omitted)).

¶ 28 Additionally, Wachovia argues that, if it is "required to bring the lawsuit against the attorney before the underlying case is resolved, the attorney has a conflict of interest if he or she were to continue to represent the client in the underlying case[.]" Wachovia's brief at 18. This same public policy argument, sometimes referred to as the "continuous representation rule," was proffered by the plaintiff in *Glenbrook,* who argued that other jurisdictions tolled the statute of limitations on legal malpractice claims during the time that the defendant attorney continued to represent the plaintiff in the underlying action. *Glenbrook,* 839 A.2d at 441. However, we rejected this argument and emphasized that Pennsylvania applies the occurrence and discovery rules when assessing the statute of limitations in a legal malpractice case. *Id.* at 442.

¶ 29 Finally, although we reached the same conclusion as the trial court, we note that our conclusion was reached pursuant to different reasoning and, most significantly, we departed from the trial court's decision that the statute of limitations on the professional negligence claim accrued

on June 30, 2003, *i.e.,* when a judgment of over three million dollars was entered in Pisani's favor. Nevertheless, we may affirm the trial court's decision on an alternate basis. *Nationwide Mut. Ins. Co. v. Fleming,* 924 A.2d 1259, 1269 (Pa.Super.2007) ("As an appellate court, we may uphold a decision of the trial court if there is any proper basis for the result reached; thus we are not constrained to affirm on the grounds relied upon by the trial court.").

¶ 30 Order affirmed.