J-A16005-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JOHN A. LORENZO, INDIVIDUALLY AND MANAGING PARTNER OF PRIME MEDICA ASSOCIATES | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| C. GEORGE MILNER | |
| v. | |
| RAYMOND QUAGLIA | |
| APPEAL OF:  C. GEORGE MILNER | |
| | No. 3144 EDA 2013 |

Appeal from the Judgment Entered October 31, 2013
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: 2011 No. 04141

| | |
|---|---|
| JOHN A. LORENZO, INDIVIDUALLY AND MANAGING PARTNER OF PRIME MEDICA ASSOCIATES | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| C. GEORGE MILNER, ESQUIRE | |
| v. | |
| RAYMOND J. QUAGLIA, | |
| Appellant | No. 3415 EDA 2013 |

Appeal from the Judgment Entered October 31, 2013

J-A16005-15

in the Court of Common Pleas of Philadelphia County
Civil Division at No.: January Term, 2011 No. 04141

| | |
|---|---|
| JOHN A. LORENZO, INDIVIDUALLY AND MANAGING PARTNER OF PRIME MEDICA ASSOCIATES | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| C. GEORGE MILNER, ESQUIRE | |
| v. | |
| RAYMOND J. QUAGLIA, | No. 3416 EDA 2013 |
| Appellant | |

Appeal from the Judgment Entered October 31, 2013
in the Court of Common Pleas of Philadelphia County
Civil Division at No.: January Term, 2011 No. 04141

BEFORE:  LAZARUS, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED AUGUST 28, 2015**

In these consolidated cases, Appellants, C. George Milner, Esq.,

(Milner) and Raymond J. Quaglia, Esq. (Quaglia)[1], appeal from the judgment

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Quaglia is counsel for Appellee, Dr. John A. Lorenzo, in this action.  He also represents himself *pro se* as an additional defendant.

- 2 -

entered against them in this legal malpractice case. After review, we are constrained to vacate the judgment.

The relevant factual and procedural history of this case is as follows. Appellee, Dr. John A. Lorenzo (Lorenzo), purchased a commercial office building in Philadelphia in 1974 and he subsequently leased it to a medical imaging company. On April 16, 2001, the tenant vandalized and vacated the building, causing substantial damage and rendering it un-rentable. The mortgage on the building went into default, and on April 15, 2002, Lorenzo retained Milner to defend the mortgage foreclosure action. Milner advised Lorenzo to seek redress against his insurance company, CAN Insurance/Valley Forge Insurance Company (VFIC), for the damage caused by the tenant. The VFIC policy contained a suit limitation clause requiring Lorenzo to bring any legal action against it within two years after the date the loss or damage occurred (*i.e.*, by April 16, 2003). On November 5, 2003, VFIC denied coverage of Lorenzo's claim.

Lorenzo discharged Milner and he retained Quaglia to represent him in a suit against VFIC. On November 4, 2004, Lorenzo initiated a suit against VFIC. The jury found in favor of Lorenzo, and he obtained a $4,000,000.00 verdict against VFIC. The trial court subsequently remitted the verdict to $2,049,000.00.

VFIC appealed the judgment to this Court. On February 3, 2009, this Court reversed the judgment, determining that the suit limitations provision in the policy barred the claim against VFIC, and that Lorenzo failed to show

any actions on behalf of VFIC that induced him to conclude that the limitations period was waived.

On January 31, 2011, Lorenzo filed the instant legal malpractice action against Milner, alleging that he was negligent in failing to file a lawsuit against VFIC within the suit limitations period. (*See* Complaint, 1/31/11, at unnumbered pages 1, 3 ¶¶ 8, 10). On May 13, 2011, Milner joined Quaglia as an additional defendant, claiming that any harm sustained by Lorenzo in the underlying VFIC litigation was the result of Quaglia's failure to create a proper record at trial and on appeal. (*See* Complaint for Joinder of Additional Defendant Pursuant to [Pa.R.C.P.] 2252, 5/13/11, at unnumbered page 5 ¶¶ 18-19).

Lorenzo's deposition in this case took place on September 25, 2012. He testified in relevant part as follows:

Q: Okay. When did you first have an understanding as to what this two-year limitation [in the VFIC policy] meant as far as not being able to pursue a lawsuit?

A: I'd say probably some time during the Valley Forge Insurance trial.

Q: Okay.

A: So during the testimony of—George[] [Milner's] testimony.

Q: Okay. So that as of the time of the trial you understood that—

A: At the time—

- 4 -

Q: — the insurance company was saying that since the lawsuit [] wasn't filed within the two years that you found out there was actual damage to the property—

A: No, not at the time of the trial, at the time George Milner testified, which was July 27th, 2006.

Q: Okay.  So when he testified in July 2006, that was during your trial?

A: That's when I understood there was a problem.

Q: Okay.  So you understood there was a problem?

A: Yup.

Q: And the problem was that there hadn't been a lawsuit filed in time, correct?

A:  Correct. . . .

*     *     *

 A: At that point I didn't know what the consequences were going to be.  We were still in the process of the trial, and George [Milner] should have known that before we went, before the 4/16/03 date expired in the policy.

Q:  Okay.  So just to get this clear, as of the time when [Milner] testified in July of 2006, at least by that time you knew that there was a problem?

A: There was a problem.

Q: Okay.

A: Definitely I knew there was a problem.

Q: Now, at the time that you knew there was a problem, did you have any discussion with Mr. Quaglia as [to] what you should do to try to overcome or avoid that problem?

A: No, I didn't discuss that, I left it up to him to run the trial as he saw fit.  And as it turned out . . . we won a 4-million dollar verdict . . . [the claim] was then barred because of George[]

[Milner's] negligence.  I mean the damages are very evident. He—he didn't protect my legal interest[.]

(Lorenzo Deposition, 9/25/12, at 128-30).

Quaglia's deposition in this case took place on October 9, 2012.  He testified in pertinent part as follows:

Q: Sir, by 2006, July of 2006—actually, I believe May of 2006 when Mr. Milner's deposition was taken—you knew that there had been no either written or oral extension of the suit limitation clause; correct?

A: I think that's when we found out, at the deposition.

Q: In 2006; correct?

A: Yeah.

Q: So at least by the summer of 2006, both you and Dr. Lorenzo were aware that no lawsuit had been filed within the two-year suit limitation clause; correct?

A: Right.

Q: And that there had been no written extension or waiver of the suit limitation clause; correct?

A: Yes.

Q: And that there had been no oral extension of the suit limitation clause; is that correct?

A: Yes.

(Quaglia Deposition, 10/09/12, at 146-47).

On December 11, 2012, Milner filed a motion for summary judgment, asserting that Lorenzo's malpractice claim was barred by the statute of limitations because Milner's alleged breach of duty giving rise to the claim occurred during 2003, and the instant suit was not filed until 2011.  (***See***

Motion for Summary Judgment, 12/11/12, at 1-2). Lorenzo filed a response on January 10, 2013, contending that the suit was timely filed because the statute of limitations did not begin to run until February 3, 2009, when the Superior Court reversed the judgment entered against VFIC. (*See* Lorenzo's Answer to Motion for Summary Judgment, 1/10/13, at 13-14 ¶¶ 41, 43). On February 20, 2013, the trial court entered an order denying Milner's motion for summary judgment.

The matter proceeded to a jury trial, and on June 7, 2013, the jury returned a verdict for Lorenzo against both Milner and Quaglia, in the amount of $3,278,400.00.[2] On June 13, 2013, Milner filed a timely post-trial motion, requesting, *inter alia*, that the court enter judgment notwithstanding the verdict (JNOV) on the basis of expiration of the statute of limitations. Quaglia filed timely post-trial motions on June 14, 2013, on behalf of both Lorenzo and himself as additional defendant, requesting that the court mold the verdict or enter JNOV so that the full amount of the verdict is assessed only against Milner. On October 31, 2013, Lorenzo filed a praecipe to enter judgment on the verdict because the trial court did not enter an order disposing of the post-trial motions within 120 days. *See* Pa.R.C.P.

---

[2] The jury apportioned liability at twenty-five percent for Milner and seventy-five percent for Quaglia. (*See* Jury Verdict Form, 6/07/13, at 1; Praecipe to Enter Judgment on the Verdict, 10/31/13, at 1).

227.4(1)(b). The prothonotary entered judgment on the verdict on that same date. This timey appeal followed.[3]

Milner raises the following issues for this Court's review:

1. Was Mr. Milner entitled to judgment on Plaintiff Dr. Lorenzo's' [sic] 2011 legal malpractice claim as time-barred, when it was premised on an alleged breach of duty in 2003—not filing suit against Lorenzo's' [sic] insurer VFIC within two-years of a 2001 loss—and (1) Dr. Lorenzo waived any discovery rule/tolling issue by failing to raise it in response to Milner's [n]ew [m]atter, and (2) tolling failed on the facts, including testimony Dr. Lorenzo knew of this occurrence/breach of duty and its consequences to his claim by at least 2006?

2. Was Mr. Milner entitled to judgment in this action where Dr. Lorenzo failed to meet his case within a case burden by proving: (1) he would have prevailed on VFIC's reasons for denying coverage—other than the suit limitations provision—in the underlying action when he offered no evidence on those issues in this trial?

3. Under the case within a case standard, was Mr. Milner entitled to judgment where the undisputed evidence established that when his representation ended, the suit limitation period in the underlying claim had been deferred or otherwise tolled by the insurer's conduct, and did not preclude P[rime] M[edica] A[ssociates]/Lorenzo's claim?

4. Did the trial court err in refusing to limit/remit Dr. Lorenzo's [d]amages to $1,100,000 in this malpractice action, where [p]laintiff's evidence in the underlying trial against the insurer

---

[3] Pursuant to the trial court's orders, Milner and Quaglia filed timely concise statements of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). The trial court entered an opinion on July 28, 2014. *See* Pa.R.A.P. 1925(a).

Although Appellants filed separate notices of appeal, this Court entered an order consolidating the appeals *sua sponte* on February 11, 2014. (*See* *Per Curiam* Order, 2/11/14).

amounted to no more than $1,100,000 in damages for covered "direct physical loss of or damage to [c]overed [p]roperty"?

5. Did the trial court err in failing, consistent with its pretrial order, to remit or mold the verdict of over $3.2 million to $2.049 million, (the maximum available coverage and the remitted verdict in the underlying action) to eliminate the improper, presumed award of interest in this legal malpractice case?

6. Did the trial court err in refusing to instruct the jury on the standard of care that applied to this malpractice claim: that an insurer waives or is estopped from raising a suit limitation provision where its conduct—stating its investigation of the claim is continuing, that it awaits a deposition of insured and outcome of related suit—induces inaction, and precludes the need to file suit?

(Milner's Brief, at 2-3) (numbering added).

Quaglia raises the following issues for our review:

1. Can a successor attorney be held liable for legal malpractice committed before he was retained in the case by a prior attorney who concealed his malpractice from him and his client until it was uncovered on appeal?

2. Even if Milner had standing to sue Quaglia, was Quaglia's negligence the factual cause (proximate cause) of Dr. Lorenzo's loss of his [m]ulti-[m]illion [d]ollar judgment on appeal?

3. Even if Milner had standing to sue Quaglia, did the [c]ourt err in asking the jury to apportion fault between [Milner] and [Quaglia] without any basis to do so?

4. Did the [c]ourt err in refusing to allow cross-examination of Milner on [n]ew [m]atter filed by [a]dditional [d]efendant in response to Milner's [j]oinder [c]omplaint raising abandonment of Dr. Lorenzo as his expert in the bad faith case before Judge Sheppard?

- 9 -

5. Did the [c]ourt err in permitting Milner's expert to testify contrary to the law of the case, a precedential Superior Court decision affirmed on appeal?

(Quaglia's Brief, at 32-33).

Our standard of review of a trial court order denying a motion for JNOV is as follows:

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

**O'Kelly v. Dawson**, 62 A.3d 414, 419 (Pa. Super. 2013) (citation omitted).

In his first issue, Milner argues that the trial court erred in failing to determine that Lorenzo's malpractice suit is time-barred by the statute of limitations. (**See** Milner's Brief, at 18-30). After review, we are constrained to agree.

"Preliminarily, we note that [a] question regarding the application of the statute of limitations is a question of law." *K.A.R. v. T.G.L.*, 107 A.3d 770, 775 (Pa. Super. 2014), *appeal denied*, 2015 WL 3422281 (Pa. May 12, 2015) (citation and internal quotation marks omitted). "Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as [the appellate] court may review the entire record in making its decision." *Id.* (citation omitted).

To begin our analysis, we observe that Lorenzo's complaint asserts a single count of legal malpractice based on Milner's alleged negligence. (*See* Complaint, 1/31/11, at unnumbered pages 1, 3 ¶ 10). Thus, the applicable statute of limitations period is two years. *See* 42 Pa.C.S.A. § 5524(7); *see also Wachovia Bank, NA v. Ferretti*, 935 A.2d 565, 571 (Pa. Super. 2007) (stating that two-year statute of limitations period applies to legal malpractice claim sounding in negligence).

This Court has explained that:

. . . the trigger for the accrual of a legal malpractice action, for statute of limitations purposes, is not the realization of actual loss, but the occurrence of a breach of duty. Pennsylvania law provides that:

the occurrence rule is used to determine when the statute of limitations begins to run in a legal malpractice action. **Under the occurrence rule, the statutory period commences upon the happening of the alleged breach of duty.** An exception to this rule is the equitable discovery rule which will be applied when the injured party is unable, despite the exercise of due diligence, to know of the injury or its cause. **Lack of**

> **knowledge, mistake or misunderstanding, will not toll the running of the statute**.
>
> Pennsylvania favors strict application of the statutes of limitation. Accordingly, the statute of limitations in a legal malpractice claim begins to run when the attorney breaches his or her duty, and is tolled only when the client, despite the exercise of due diligence, cannot discover the injury or its cause.

*Wachovia Bank*, *supra* at 572-73 (citations omitted) (some emphasis in original; some emphasis added).

With respect to the discovery rule, this Court has stated:

> The discovery rule is a judicially created device that tolls the running of the applicable statute of limitations until that point when the plaintiff knows or reasonably should know: (1) that he has been injured; and (2) that his injury has been caused by another party's conduct.
>
> *       *       *
>
> Pennsylvania's formulation of the discovery rule reflects a narrow approach to determining accrual for limitations purposes and places a greater burden upon Pennsylvania plaintiffs vis-à-vis the discovery rule than most other jurisdictions. The commencement of the limitations period is grounded on inquiry notice that is tied to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause.

*K.A.R.*, *supra* at 779-80 (citations and quotation marks omitted).

Here, the record reflects that Milner represented Lorenzo from April 2002 until December 2003, when Lorenzo discharged him. (*See* Complaint, 1/31/11, at unnumbered page 2 ¶¶ 4-5; Trial Court Opinion, 7/28/14, at 2). Applying the occurrence rule, *see Wachovia Bank*, *supra* at 572-73, Lorenzo's legal malpractice cause of action against Milner accrued at the

time Milner allegedly breached his duty to Lorenzo by failing to file a lawsuit against VFIC within the suit limitations period, by April 16, 2003. (**See** Complaint, 1/31/11, at unnumbered page 3 ¶¶ 8, 10; Lorenzo's Brief, at 2).

Lorenzo claims application of the discovery rule to toll the statute of limitations and maintains that, prior to the Superior Court's February 3, 2009 decision reversing the underlying judgment against VFIC, he was not able to know that he was injured by Milner or that Milner's malpractice caused him damage. (**See** Lorenzo's Brief, at 13-14, 19). This claim, however, is not supported by the record.

Specifically, the record reflects that, in September of 2005, during the VFIC litigation, VFIC advised Lorenzo of its position that the suit against it was barred because Lorenzo failed to file it by April 16, 2003, while he was represented by Milner. (**See** Milner's Motion for Summary Judgment, 12/11/12, at 5 ¶ 16; **see also** Exhibit E). Thus, in 2005, Lorenzo was alerted to Milner's potential malpractice in failing to file suit against VFIC within the time-frame set by the suit limitations provision.

Further, at his deposition in this case, Lorenzo testified that, as of July of 2006, he "[d]efinitely [] knew there was a problem[]" in the VFIC litigation because he had not filed a lawsuit in time. (Lorenzo Deposition, 9/25/12, at 130; **see id.** at 129). Quaglia likewise confirmed that, as of the summer of 2006, he and Lorenzo were aware that Milner had not filed a lawsuit against VFIC within the two-year suit limitation clause and that the

provision had not been extended or waived. (**See** Quaglia Deposition, 10/09/12, at 147).

Thus, the record demonstrates that the alleged damages suffered by Lorenzo due to Milner's failure to file suit against VFIC by April 2003 were identifiable at least by July of 2006. Lorenzo's and Quaglia's own testimony shows that, by 2006, they were on "inquiry notice . . . tied to actual or constructive knowledge of at least some form of significant harm and of a factual cause linked to [Milner's] conduct[.]" **K.A.R. supra**, at 779-80 (citation and internal quotation marks omitted). Therefore, assuming application of the discovery rule, the two-year statute of limitations in which to file this malpractice action against Milner was tolled until July of 2006 and expired in July of 2008. **See id.** However, Lorenzo did not file the instant lawsuit until January 31, 2011.

After review of the record, and mindful of the Pennsylvania courts' policy favoring strict application of statutes of limitation, **see Wachovia Bank**, **supra** at 572-73, we conclude that the two-year statute of limitations had run by the time Lorenzo instituted this lawsuit in 2011.[4] Milner's first issue merits relief.[5]

---

[4] We note that Lorenzo invokes the doctrine of fraudulent concealment and asserts that Milner engaged in a "course of conduct of concealment . . . that ended with [the Superior Court's] uncovering [of his] malpractice on February 3, 2009 on appeal." (Lorenzo's Brief, at 19; **see id.** at 17). While the doctrine of fraudulent concealment serves to toll the running of the statute of limitations in cases where the defendant "through fraud or

*(Footnote Continued Next Page)*

Judgment vacated. Case remanded for entry of judgment in favor of Milner and Quaglia. Jurisdiction relinquished.

Judge Lazarus joins the Memorandum.

Judge Olson concurs in the result.

_(Footnote Continued)_ ————————————

concealment . . . causes the plaintiff to relax his vigilance or deviate from his right of inquiry into the facts," **_K.A.R._**, **_supra_** at 780, this doctrine is not applicable in the instant case. As discussed above, the testimony of Lorenzo and Quaglia reflects that they were aware in 2006 that Milner failed to file an action against VFIC within the suit limitations period. Thus, no basis for a claim of concealment through February 2009 exists.

We also acknowledge Lorenzo's assertion that he could not file a malpractice action against Milner until the judgment in the underlying litigation was finally resolved in VFIC's favor. (**_See_** Lorenzo's Brief, at 14-15). However, we do not find this argument persuasive because in Pennsylvania, the statute of limitations is not tolled in legal malpractice actions until all appeals in the underlying action have been exhausted. **_See Robbins & Seventkov Orthopedic Surgeons, Inc. v. Geisenberger_**, 674 A.2d 244, 248 (Pa. Super. 1996) (rejecting appellants' argument to toll statute of limitations in legal malpractice claim while appeal of underlying action pending, stating: "[i]n Pennsylvania, the method used to determine when the statute begins to accrue is the occurrence rule or the discovery rule when appropriate."); **_see also Wachovia Bank_**, **_supra_** at 573-74 (recognizing that, in some jurisdictions, statute of limitations on malpractice claim accrues at time of damage, such as at time when judgment is entered in underlying action, but that this is not law in Pennsylvania).

[5] Because of our disposition of Milner's first issue, it is not necessary to address the parties' remaining issues on appeal.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/28/2015