J-A15016-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| HEALTHCARE VENTURES GROUP, LLC AND PHYSICIANS RX PHARMACY, LLC | : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : | |
| PREMIER PHARMACY, INC. D/B/A PREMIER PHARMACY SERVICES, GOOD HEALTH, INC. D/B/A PREMIER PHARMACY SERVICES, JOEL YERTON AND TODD WEBER | : : : : : : | No. 1345 WDA 2022 |
| Appellants | | |

Appeal from the Judgment Entered October 17, 2022
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-16-023951

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.:                  **FILED: September 29, 2023**

Appellants Premier Pharmacy, Inc., d/b/a Premier Pharmacy Services, Good Health, Inc., d/b/a Premier Pharmacy Services ("Premier"), Joel Yerton, and Todd Weber (collectively, "Appellants") appeal from the judgment entered in favor of Healthcare Ventures Group, LLC and Physicians Rx Pharmacy, LLC (collectively, "PRxP"). We affirm.

The trial court accurately summarized the facts as follows:

This case arises out of dispute between Plaintiff [PRxP]; its former employees, [Yerton and Weber]; and [Premier]. PRxP and Premier are competitors in the 340B pharmacy services industry, which provides services to certain "Covered Entities," such as hospitals

_____

[*] Retired Senior Judge assigned to the Superior Court.

and clinics, that lack in-house pharmacies and must outsource these services to companies like PRxP and Premier. At the time of the events at issue in this case, Yerton and Weber were employed by PRxP as part of its sales team to sell PRxP's services to, and enter contracts with, Covered Entities.

The essence of PRxP's multiple causes of action is that Yerton and Weber made plans while employed by PRxP, and took steps in furtherance thereof, to divert certain business prospects and clients away from PRxP and to take those opportunities with them to Premier, a competitor, when Yerton and Weber left PRxP's employment. While employed by PRxP, Weber and Yerton worked to solicit the business of two Covered Entities at issue in this case: AIDS Connecticut, Inc. ("ACT") and Middletown Community Health Center ("MCHC"). Yerton and Weber conveyed to PRxP that ACT and MCHC were highly likely to close a deal with PRxP. Eventually, ACT signed a letter of intent to enter into a pharmacy services contract with PRxP.

During this time, Yerton and Weber sought employment at PRxP's competitor, Premier. Yerton and Weber developed a "project plan" for Premier which articulated their plans to bring clients and revenue to Premier. This project plan was similar to the one they had developed for PRxP to solicit MCHC and ACT. Soon after Yerton and Weber left PRxP and joined Premier, MCHC backed out of their discussions with PRxP and ACT reneged on their letter of intent. Shortly thereafter, both Covered Entities entered into agreements with Premier for pharmacy services.

[PRxP] instituted the instant action claiming that [Appellants] breached their fiduciary duties as employees, converted proprietary information, and tortiously interfered with PRxP's existing and prospective contractual relationships with MCHC and ACT.

Trial Court Opinion, dated Nov. 30, 2022, at 1-2.

A three-day jury trial was held in March 2022. During jury deliberations, the jury asked the court, "Did Premier revenue [$]1.9 million from Cornerstone over the five years of the contract?" N.T. Trial, 3/22/22-3/24/22, at 438. Cornerstone Health is MCHC's successor and acquired MCHC's assets

after MCHC closed in November 2017. *Id.* at 206, 262. Appellants argued that the court should tell the jury the answer to its question was "no" because there was no evidence that Cornerstone had incurred damages. The court declined to give that answer. It said that it was "going to tell them it's up to them to decide," and that if the jury found damages for Cornerstone, Appellants could raise the issue in post-trial motions. *Id.* at 439, 440.

At the conclusion of the trial, the jury returned a verdict in favor of PRxP and against Appellants, and awarded $2.1 million in damages. Appellants filed post-trial motions seeking a new trial, judgment notwithstanding the verdict ("JNOV"), and remittitur. The court denied Appellants' post-trial motions. A final judgment was entered on October 17, 2022. This appeal followed. Appellants raise the following issues:

1. When presented with the jury question, "Did Premier revenue $1.9 million from Cornerstone over the five years of the contract?," was it proper for the trial court to answer this question, over [Appellants'] objection, "It is up to you to decide the answer to this question" even though (1) [PRxP] admitted no evidence of Premier's "revenue" from Cornerstone, (2) [PRxP] admitted no evidence that [PRxP] ever had a "prospective contract" with Cornerstone, and (3) any "revenue" Premier received from Cornerstone was not a proper measure of damages—and were [Appellants] entitled to a new trial after the jury awarded [PRxP] $2.1 million short[l]y after the trial court answered the jury's question?

2. Whether [Appellants] were entitled to a new trial, judgment notwithstanding the verdict, and/or remittitur after the jury entered a $2.1 million after the jury demonstrated clear confusion as to the proper measure of damages and the jury's award was clearly speculative[?]

Appellants' Br. at 5.

Appellants argue that the trial court abused its discretion when it instructed the jury it was for them to decide whether Premier received $1.9 million in revenue from Cornerstone. *Id.* at 13. They maintain that the court should have answered the jury's question, "No." *Id.* at 26. According to Appellants, Premier's "revenue" from Cornerstone "was not an issue properly before the jury because there was no evidence about Premier's revenue in relation to any dealings, contracts, or patients associated with Cornerstone." *Id.* (emphasis omitted). They argue that there was no evidence that PRxP ever had a prospective contract with Cornerstone. *Id.* at 19. Rather, they contend that the two prospective contracts alleged by PRxP that Appellants interfered with were with MCHC and ACT, and Premier serviced only five MCHC patients and no ACT patients, and only earned $12,000 from the five MCHC patients. *Id*. at 13, 26. Appellants argue that they were "denied a fair trial when the trial court expressly told the jury it was for them to decide an issue that was not, in fact, properly before the jury and demonstrated the jury's clear confusion about the proper measure of damages." *Id.* at 14. In Appellants' view, the court erred when it denied their request for a new trial. *Id.*

"Trial courts have broad discretion to grant or deny a new trial." *Zeigler v. Detweiler*, 835 A.2d 764, 767 (Pa.Super. 2003) (*en banc*). The standard of review when analyzing a decision by a trial court to grant or deny a new trial is abuse of discretion. *Id.* "[A]bsent a clear abuse of discretion by the

- 4 -

trial court, appellate courts must not interfere with the trial court's authority to grant or deny a new trial." **Harman ex rel. Harman v. Borah**, 756 A.2d 1116, 1122 (Pa. 2000).

When reviewing claims that the trial court erred in instructing the jury, our scope of review is to determine whether the court committed a clear abuse of discretion or error of law controlling the outcome of the case. **Jeter v. Owens-Corning Fiberglass Corp.**, 716 A.2d 633, 635 (Pa.Super. 1998). "[A] trial judge has wide latitude in his or her choice of language when charging a jury, provided always that the court fully and adequately conveys the applicable law." **Wagner v. Anzon**, 684 A.2d 570, 577 (Pa.Super. 1996) (citation omitted). "Error in a charge is sufficient ground for a new trial, if the charge as a whole is inadequate or not clear or has a tendency to mislead or confuse rather than clarify a material issue." **Jeter**, 716 A.2d at 635 (citation omitted). Also, "[t]here may be situations in which a trial judge may decline to answer questions put by the jury, but where a jury returns on its own motion indicating confusion, the court has the duty to give such additional instructions on the law as the court may think necessary to clarify the jury's doubt or confusion." **Worthington v. Oberhuber**, 215 A.2d 621 (Pa. 1966).

Here, the trial court found that it properly instructed the jury that their question was a factual question for them to find. Trial Ct. Op. at 10. It noted that after receiving the court's response to their question, the jury did not indicate any confusion. **Id.** The court explained that it refused to answer "no" to the jury's question because "that would require questioning the jury about

- 5 -

the basis of their question to determine if there was or was not evidence to support the finding." ***Id.***

To the extent Appellants challenge the answer the trial judge gave the jury, that issue is waived because the notes of testimony in the certified record do not contain the passage in which the judge gave the answer. It is not clear, but it appears that that particular passage was either not recorded by the court reporter or not transcribed. In either event, it was Appellants' duty to ensure that the certified record contained the materials necessary for this Court to decide the issues on appeal. ***See Commonwealth v. Midgley***, 289 A.3d 1111, 1120 (Pa.Super. 2023). Appellants took no steps here to ensure that the record was complete in this regard. ***See*** Pa.R.A.P. 1926.

In any event, the trial court was within its discretion in informing the jurors that it was for them to decide the question. The question in issue involved a factual determination, based on the evidence at trial, and it is the jury's recollection of the evidence that controls. Appellants did not specifically ask the court to read back a portion of the testimony. They asked the court to give the jury a firm answer of "no." We find no abuse of discretion.

Appellants next contend that the court erred when it denied their post-trial motions for a new trial, JNOV, and remittitur because the jury's verdict of $2.1 million was speculative and based on mistake. Appellants' Br. at 14. They argue that nothing prevented PRxP from entering into contracts with MCHC and ACT after Yerton and Weber left PRxP. ***Id.*** at 35. Appellants maintain that "[n]othing in evidence suggests that had PRxP executed

- 6 -

[Pharmacy Services Agreements ("PSA's")] with MCHC and ACT that PRxP would have serviced hundreds if not thousands of patients more than what Premier serviced (a total of five patients)." *Id.* at 36-37. They conclude that the court should have granted it remittitur and reduced the verdict to $12,000, which was the actual revenue Premier received from servicing patients of MCHC. *Id.* at 37.

"Where an appellant's claim arises from a challenge to the jury's determination of damages, our review is highly circumspect[.]" ***Betz v. Erie Ins. Exch.***, 957 A.2d 1244, 1264 (Pa.Super. 2008). "The duty of assessing damages is within the province of the jury and should not be interfered with by the court, unless it clearly appears that the amount awarded resulted from caprice, prejudice, partiality, corruption or some other improper influence." ***Id.*** (citations omitted). The factfinder must measure the value of the testimony "by weighing the evidence and determining its credibility" and "by accepting or rejecting the estimates of the damages given by the witnesses." ***Delahanty v. First Pennsylvania Bank, N.A.***, 464 A.2d 1243, 1257 (Pa.Super. 1983). "In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence." ***Betz***, 957 A.2d at 1264 (citations omitted). "If the verdict bears a reasonable resemblance to the damages proven, we will not upset it merely because we might have awarded different damages." ***McManamon v. Washko***, 906 A.2d 1259, 1285 (Pa.Super. 2006).

"[D]amages are not recoverable if they are too speculative, vague or contingent and are not recoverable for loss beyond an amount that the evidence permits to be established with reasonable certainty." ***Spang & Co. v. U.S. Steel Corp.***, 545 A.2d 861, 866 (Pa. 1988). However, "damages are speculative only if the uncertainty concerns the fact of damages rather than the amount." ***Wachovia Bank, N.A. v. Feretti***, 935 A.2d 565, 572 (Pa.Super. 2007) (citation omitted and emphasis removed).

The test of whether damages are speculative "has nothing to do with the difficulty in calculating the amount, but deals with the more basic question of whether there are identifiable damages[.]" ***Rizzo v. Haines***, 555 A.2d 58, 68 (Pa. 1989) (citation omitted). "While the trier of fact may not use sheer conjecture as a basis for arriving at a verdict, it may use a measure of speculation in aiming at a verdict or an award of damages, and an even greater degree of flexibility is granted in regard to testimony concerning prospective or future damages, which are at best, not always easy or certain of ascertainment and are to a large extent based on probabilities and uncertainties." ***Delahanty***, 464 A.2d at 1257.

Here, PRxP's Chief Financial Officer, Robert Feltovich, testified that before Yerton and Weber left PRxP, there was a 90 percent probability that PRxP would have entered into a contract with MCHC and a 75 percent probability that it would have entered into a contract with ACT. N.T. at 93-94. Feltovich compiled a spreadsheet of PRxP's estimated damages, which was marked as Plaintiff's Trial Exhibit 4. ***Id.*** at 94. He surmised that PRxP would

have made $7.7 million in revenue had the deals with MCHC and ACT closed. *Id.* at 106. This estimate was based on the negotiations and emails between Yerton and Weber with MCHC and ACT before they left PRxP, the draft PSA's, the number of patients, and the average cost of prescriptions. *Id.* at 95-99. Weber also testified that he estimated that contracts with MCHC and ACT would result in a projected revenue of $7.5 million. *Id.* at 301.

Appellants suggest that the amount of the award of damages was speculative. However, as stated above, damages are speculative only if the uncertainty concerns the fact of damages rather than the amount. *Feretti*, 935 A.2d at 572. It was within the province of the jury to determine the amount of damages that resulted from Appellants' interference with PRxP's prospective contracts. *Betz*, 957 A.2d at 1264. Because there was competent evidence of damages presented to the jury, the jury's award was not based upon speculation and the trial court did not err in denying Appellants' motions for post-trial relief.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2023