J. S67014/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| SHEILA JANI, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | No. 3322 EDA 2015 |
| | : | |
| STEVEN F. O'MEARA, ESQUIRE | : | |

Appeal from the Judgment Entered November 30, 2015,
in the Court of Common Pleas of Delaware County
Civil Division at No. 13-8800

BEFORE:  FORD ELLIOTT, P.J.E., RANSOM, J. AND STEVENS, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED NOVEMBER 18, 2016**

Sheila Jani ("Jani"), plaintiff in the court below, appeals from the judgment entered November 30, 2015, in favor of defendant/appellee, Steven F. O'Meara, Esq. ("O'Meara"), in this legal malpractice action.[1]  We affirm.

---

* Former Justice specially assigned to the Superior Court.

[1] Jani purports to appeal from the order of October 21, 2015, denying post-trial motions.  Ordinarily, an appeal properly lies from the entry of judgment, not from the order denying post-trial motions.  **See generally, Johnston the Florist, Inc. v. TEDCO Constr. Corp**., 657 A.2d 511, 516 (Pa.Super. 1995).  Nevertheless, a final judgment entered during pendency of an appeal is sufficient to perfect appellate jurisdiction.  **Drum v. Shaull Equip. and Supply Co.**, 787 A.2d 1050 (Pa.Super. 2001), **appeal denied**, 803 A.2d 735 (Pa. 2002).  **See also** Pa.R.A.P. 905(a) (stating notice of appeal filed after court's determination but before entry of appealable order shall be treated as filed after such entry and on the day of entry).

The Honorable Spiros E. Angelos, sitting as finder-of-fact in this non-jury trial, aptly summarized the history of this case as follows:

> [Jani] filed a complaint with a single count for breach of contract against [O'Meara], her former attorney, on September 24, 2013. [Jani] testified that she hired [O'Meara] to represent her against two (2) tenants named on a lease for the property that she wanted evicted for lack of payment of rent. [Jani] testified that the lease for the property has two (2) signatures on it, but that neither she nor her real estate agent witnessed the execution of the lease and so she does not know who actually signed the lease. [O'Meara] sent [Jani] a letter dated April 5, 2012 confirming his representation and stating that he intended to contact the defendants and file a landlord tenant action in the District Court for Glen Mills. [Jani] sent [O'Meara] the lease documents [in response to] the April 5, 2012 letter. [Jani] paid [O'Meara] a flat fee, which included a one thousand dollar ($1,000.00) attorney fee and court costs of one hundred eighty-three dollars and fifty-six cents ($183.56).
>
> [O'Meara] filed an action against one of the tenants, Perry Panaccio, and informed [Jani] by letter dated May 7, 2012 that he was not sure the other tenant listed on the lease, Joann Camero, was culpable after reviewing the lease documents and performing his own investigation into the matter. [O'Meara] testified credibly that [Jani] agreed not [to] proceed against Ms. Camaro [sic] following a discussion between the parties on May 15, 2015 [sic]. [Jani] sent [O'Meara] an email the next day, May 16, 2012, stating that after thinking about the situation, if [O'Meara] wanted to continue to represent her, he had to include Ms. Camero as a defendant. After receiving [Jani]'s email and speaking with [Jani]'s property manager that same day about Ms. Camero, [O'Meara] sent [Jani] a letter dated May 16, 2012 explaining that after a full investigation he did not see a viable claim against Ms. Camero and would not file an action against a

person he did not believe was culpable. [Jani] did not reply to [O'Meara]'s May 16, 2015 [sic] letter, but did subsequently contact [O'Meara] asking him to request a continuance of a hearing scheduled for May 22, 2015 [sic] for a family matter.

On June 1, 2012, [Jani] informed [O'Meara] by email that she no longer wished to have him represent her and demanded that he return the sums she had paid him. [O'Meara] sent [Jani] a billing statement showing that the time he spent on the matter exceeded the fee [Jani] paid for [O'Meara]'s services. [Jani] hired another attorney to represent her and paid him a flat fee of seven hundred fifty dollars ($750.00). [Jani] testified that she ultimately obtained a default judgment against Ms. Camero and Mr. Panaccio because neither showed up on the date of the hearing, but had not yet succeeded in collecting on any of the judgments. [Jani] testified that Ms. Camero filed for bankruptcy.

Following trial on February 12, 2015 and April 2, 2015, the parties were granted leave to file proposed findings of fact and conclusions of law. In her Proposed Findings of Fact and Conclusions of Law dated June 11, 2015, [Jani], for the first time, made a claim for breach of fiduciary duty. Following review of the trial transcripts and the parties' proposed findings of fact and conclusions of law, the July 21, 2015 Decision was entered finding in favor of [O'Meara] and against [Jani] on her breach of contract claim. [Jani] filed a motion for post-trial relief and a motion to amend her complaint to add a breach of fiduciary duty claim on July 31, 2015, which were denied by an Order dated October 21, 2015. [Jani] filed her notice of appeal on October 27, 2015. Judgment was not entered until November 30, 2015.

Trial court opinion, 12/15/15 at 1-4 (citations to the transcripts omitted).

On November 2, 2015, Jani was ordered to file a concise statement of errors complained of on appeal within 21 days pursuant to

Pa.R.A.P. 1925(b), and she timely complied on November 20, 2015. (Docket #24, 26.) On December 15, 2015, the trial court filed a Rule 1925(a) opinion.

Jani has raised the following issues for this court's review:

1. Did the trial court err by concluding that O'Meara had not breached his contract with Jani?

2. Did the trial court err by refusing to allow the pleadings to be conformed to the evidence that was presented at trial to include a claim for breach of fiduciary duty, a claim for which O'Meara had offered a defense anyway?

3. Did the trial court err by finding that O'Meara had not breached his fiduciary duty to Jani?

Jani's brief at 5.

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner.

**Baney v. Eoute**, 784 A.2d 132, 135 (Pa.Super. 2001) (citation omitted).

> Additionally, "the trial court, as factfinder, is free to believe all, part or none of the evidence presented . . . ." **Turney Media Fuel, Inc. v. Toll Bros., Inc.**, 725 A.2d 836, 841 (Pa.Super. 1999). "[T]herefore, assessments of credibility and conflicts in evidence

are for the trial court to resolve; this Court is not permitted to reexamine the weight and credibility determinations or substitute our judgment for that of the factfinder." *Id.*

***Sovereign Bank v. Valentino***, 914 A.2d 415, 420 (Pa.Super. 2006).

First, we address Jani's breach of contract claim. "Preliminarily, we also recognize that '[a]n action for legal malpractice may be brought in either contract or tort.'" ***Wachovia Bank v. Ferretti***, 935 A.2d 565, 570 (Pa.Super. 2007), quoting ***Garcia v. Community Legal Servs. Corp.***, 524 A.2d 980, 982 (Pa.Super. 1987).

> Generally speaking, for a plaintiff to successfully maintain a cause of action for breach of contract requires that the plaintiff establish: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages. ***Corestates Bank v. Cutillo***, 723 A.2d 1053, 1058 (Pa.Super. 1999). In the narrow realm of legal malpractice claims based on an alleged breach of a contract between an attorney and a client, the appellate courts of this Commonwealth have jurisprudentially established, and refined through time, the specific facts which a plaintiff is required to demonstrate in order to establish that a breach of a contractual duty on the part of the attorney has occurred.

***Gorski v. Smith***, 812 A.2d 683, 692 (Pa.Super. 2002), ***appeal denied***, 856 A.2d 834 (Pa. 2004).

> [***Bailey v. Tucker***, 621 A.2d 108 (Pa. 1993),] established the proposition that every contract for legal services contains, as an implied term of the contract, a promise by the attorney to render legal services in accordance with the profession at large. Thus, when an attorney enters into a contract to provide legal services, there automatically arises a

> contractual duty on the part of the attorney to render those legal services in a manner that comports with the profession at large. Hence, a breach of contract claim may properly be premised on an attorney's failure to fulfill his or her contractual duty to provide the agreed upon legal services in a manner consistent with the profession at large.

*Id.* at 694. "[I]f a plaintiff demonstrates by a preponderance of the evidence that an attorney has breached his or her contractual duty to provide legal service in a manner consistent with the profession at large, then the plaintiff has successfully established a breach of contract claim against the attorney." *Id.* at 697. *See also Ferretti*, 935 A.2d at 571 ("With regard to a breach of contract claim, 'an attorney who agrees for a fee to represent a client is by implication agreeing to provide that client with professional services consistent with those expected of the profession at large.'"), quoting *Bailey*, 621 A.2d at 115.

Jani testified that her realtor was responsible for renting out the property and she was not present to witness the signing of the lease agreement. (Notes of testimony, 2/12/15 at 38-39.) She did not know who actually signed the lease. (*Id.* at 39.) O'Meara testified that he spoke with Ms. Camero who advised him that she was a close friend of Panaccio's and had filled out a rental application on his behalf. (*Id.* at 101-102.) However, she never moved into the house and adamantly denied signing any lease.

(**Id.** at 103.)[2] Ms. Camero told O'Meara that she never went to the realtor's office and never saw a copy of the lease until he showed it to her. (**Id.** at 105.) O'Meara testified that Ms. Camero's signatures on the rental application and the lease agreement were completely different. (**Id.**) In addition, O'Meara spoke with Panaccio's attorney who informed him that he has represented Panaccio in approximately 20 cases involving property disputes, including foreclosures and landlord/tenant proceedings. (**Id.** at 104.) O'Meara learned from Panaccio's attorney "that this was the modus oper[a]ndi of Mr. [Panaccio] where he would get a woman involved, get her to sign off on these things and then, you know, he would ditch the property." (**Id.**)

Furthermore, O'Meara testified that in his judgment, Jani knew that Ms. Camero had not signed the lease agreement. O'Meara testified that, "she wanted like a deep pocket she could go after because she knew Mr. [Panaccio] wasn't going to pay." (**Id.** at 115.) When O'Meara told Jani that Ms. Camero never signed the lease, she did not dispute it: "She basically, in my mind, made an admission that she knew that Ms. Camaro [sic] had not been the one that had signed that document, the lease document." (**Id.** at 116.) "And all I'm saying is that Ms. Jani never contested whenever I confronted her with it, with the fact that the lease

---

[2] Plaintiff's counsel did not timely object to this testimony as hearsay. (**Id.** at 106.)

signature was wrong, that Ms. Camaro [sic] didn't live there, that Mr. [Panaccio] was the only person that resided there at the premises." (*Id.*) O'Meara testified that he told Jani that someone had obviously faked Ms. Camero's signature on the lease document: "But I did tell her that it was a fraud. I think she knew about the fraud. She told me repeatedly, well I just needed somebody to sign off so I could go after them." (Notes of testimony, 4/2/15 at 37.)

It is well established that an attorney is prohibited from bringing a frivolous claim. **See** Pa.R.P.C. 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."). In addition, an attorney may withdraw from representation if his client insists on taking action which is fraudulent or with which the attorney has a fundamental disagreement. **See** Pa.R.P.C. 1.16(b) ("[A] lawyer may withdraw from representing a client if: (2) the client persists in a course of action involving the lawyer's services that the lawyer reasonably believes is criminal or fraudulent; [or] (4) the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement[.]").

Here, after investigation, O'Meara reasonably believed that Ms. Camero did not sign the lease agreement, never moved into the

premises, and was not liable. Therefore, he had a professional obligation not to sue Ms. Camero, no matter what his client wanted.

Moreover, even assuming the April 5, 2012 letter[3] stating O'Meara's intention to file suit against the "defendants" (plural) constituted a binding contract to sue both Panaccio and Ms. Camero, Jani subsequently agreed to proceed only against Panaccio. O'Meara testified that on May 15, 2012, he spoke with Jani regarding his concerns:

> I spoke to her and her parents, and Mr. Cerillo[4] was there, present. And I advised her the situation was going on, that we had been back there for an hour. And I said it's clear to me that Ms. Camaro [sic] didn't – based on what she said, what she's represented, the evidence that I've looked at, and I just didn't have anything other to prove, to me, that Ms. Camaro [sic] had done anything or had signed this. Ms. Jani, again, agreed with me and agreed – further agreed that we were just going to go after Mr. [Panaccio]. And at that point my – I believed my contract had been amended, our agreement had been amended so that we're just going to go after Mr. [Panaccio] at this point. There was a meeting of the minds. I discussed it fully with her. I discussed it in front of her building manager. He agreed. She agreed.

Notes of testimony, 2/12/15 at 108-109.

> I asked her permission not to include her and she said yes, you don't have to include her. She agreed to it on May 15 while I sat there with her, her

---

[3] The April 5, 2012 letter stated, in relevant part, "It is my intention to file in the Glen Mills District Court for landlord tenant dispute. Additionally, I will be contacting defendants immediately by mail to advise of my representation." (Plaintiff's Exhibit 2.)

[4] Joseph Cerillo was Jani's property manager.

> parents, I believe it was her parents. I'm not getting any feedback so I'm assuming that was her parents. We talked about it and she agreed not to go forward with that.

Notes of testimony, 4/2/15 at 15. The trial court found O'Meara's testimony to be credible and noted that even after O'Meara's May 16, 2012 letter reiterating that in his opinion, Ms. Camero was not a proper defendant, Jani's only response was to ask for a continuance so she could attend a family function. (Trial court opinion, 12/15/15 at 7.) Therefore, the record supports the trial court's determination that the parties agreed to modify the terms of the contract.

Moreover, Jani failed to plead and prove any damages. **See Ferretti**, 935 A.2d at 571 ("when it is alleged that an attorney has breached his professional obligations to his client, an essential element of the cause of action, whether the action be denominated in assumpsit or trespass, is proof of actual loss") (citations omitted); **see also Nelson v. Heslin**, 806 A.2d 873, 876 (Pa.Super. 2002), **appeal denied**, 831 A.2d 600 (Pa. 2003) ("An essential element to this cause of action is proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or threat of future harm") (citation omitted).

As described above, Jani eventually obtained a default judgment against Ms. Camero.[5] While she alleged that she had to pay another attorney $750 to represent her, she never provided any supporting documentation that such fees were billed or paid. (Trial court opinion, 12/15/15 at 9.) O'Meara submitted a billing statement demonstrating that the time he spent on the matter, when billed at an hourly rate, actually exceeded the flat fee he initially charged Jani. (*Id.* at 8; notes of testimony, 2/12/15 at 122.) **See** Pa.R.P.C. 1.16(d) ("Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as . . . refunding any advance payment of fee or expense that has not been earned or incurred."). Therefore, we agree with the trial court that Jani failed to establish an actual loss resulting from O'Meara's alleged breach of contract that would entitle her to collect damages.

Turning to the breach of a fiduciary duty claim, Jani first raised it in her proposed findings of fact and conclusions of law filed after trial on June 11, 2015. (Trial court opinion, 12/15/15 at 10.) She did not move to amend her complaint until after the July 21, 2015 decision was filed. "Amendments to pleadings are freely allowed under the Pennsylvania Rules

---

[5] Ms. Camero filed for bankruptcy and Jani testified that she has been unable to collect the judgment. (Notes of testimony, 2/12/15 at 84.) In fact, this was another reason O'Meara advised Jani not to include Ms. Camero as a defendant, that she had hired a bankruptcy lawyer and was judgment proof. (*Id.* at 120.)

of Civil Procedure and it is within the trial court's discretion whether to grant or deny permission to amend. An amendment, however, may not introduce a new cause of action after the applicable statute of limitations has run." **Beckner v. Copeland Corp.**, 785 A.2d 1003, 1005 (Pa.Super. 2001), **appeal denied**, 805 A.2d 518 (Pa. 2002), citing Pa.R.C.P. 1033; **Trude v. Martin**, 660 A.2d 626, 635 (Pa.Super. 1995) (quotation marks omitted).

Here, Jani sought to amend her complaint to add a new cause of action, breach of a fiduciary duty, after the two-year statute of limitations period had expired. 42 Pa.C.S.A. § 5524. In her email dated June 1, 2012, terminating O'Meara's representation, Jani complained that, "I thought I had hired you to represent my interest not Ms[.] Comero's [sic] interest. But from your letter dated 5/16/12 it is clear that you are representing Ms[.] Comero's [sic] interest." (Plaintiff's Exhibit 6.) Despite these allegations, Jani did not pursue a claim for breach of a fiduciary duty until after trial. The trial court did not abuse its discretion in denying Jani's motion to amend the pleadings.

At any rate, Jani failed to prove any breach of a fiduciary duty.

> Under Pennsylvania law, the duty of an agent to his principal is one of loyalty in all matters affecting the subject of his agency, and the agent must act with the utmost good faith in the furtherance and advancements of the interests of his principal. This duty is the same as that of fiduciary which has been described as the duty to act for the benefit of another as to matters within the scope of the relation.

- 12 -

***Garbish v. Malvern Fed. Sav. & Loan Assn.***, 517 A.2d 547, 553-554 (Pa.Super. 1986), ***appeal denied***, 533 A.2d 712 (Pa. 1987) (citations and quotation marks omitted).

Jani argues that O'Meara had an undisclosed relationship with Ms. Camero and appeared to be more concerned with protecting Ms. Camero than representing Jani's interests. (Jani's brief at 18-19.) O'Meara testified that he had met Ms. Camero socially 20 years earlier and knew she worked in Domestic Relations at the courthouse but did not have a relationship with her. (Notes of testimony, 4/2/15 at 49-50.) The trial court found that Jani failed to establish that the mere fact O'Meara was acquainted with Ms. Camero created a conflict of interest or that O'Meara failed to act in Jani's best interests. (Trial court opinion, 12/15/15 at 13.) It is clear from the testimony that O'Meara refused to file suit against Ms. Camero because he did not believe she was liable, not because of any prior relationship. Furthermore, any breach of fiduciary duty claim would likewise fail because Jani failed to prove actual damages.

The trial court appropriately summed up this case, which never should have seen the light of day in a courtroom, as follows:

> In this case, what was perceived to be a simple landlord tenant matter became unforeseeably complicated, which led to a disagreement between an attorney and his client. Since the parties were unable to resolve their disagreement, the client was forced to seek alternative representation. While unfortunate, these circumstances do occur, are contemplated by the law, and do not necessarily

> mean any party breached contractual obligations or acted in bad faith or without legal justification. [Jani] failed to establish that [O'Meara] breached his contractual obligations or his fiduciary obligations. [Jani] also failed to establish that she suffered any actual loss because of [O'Meara]'s conduct.

Trial court opinion, 12/15/15 at 15. We agree and can discern no basis for disturbing the trial court's verdict.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/18/2016